**Stephen KAPOSSY, Plaintiff,**

v.

**McGRAW–HILL, INC., Defendant.**

**Civil Action No. 93–5277.**

United States District Court,
D. New Jersey.

March 21, 1996.

Gregory S. Schaer, Law Offices of Linda B. Kenney, Red Bank, N.J., for Plaintiff.

Kerry M. Parker, Crummy, Del Deo, Dolan, Griffinger & Vecchione, Newark, N.J., for Defendant.

OPINION

ORLOFSKY, District Judge:

Plaintiff, Stephen Kapossy ("Kapossy"), brings this action against his former employer, McGraw–Hill, Inc. ("McGraw–Hill"), alleging age discrimination in violation of the New Jersey Law Against Discrimination, N.J.Stat.Ann. §§ 10:5–1 to 5–38 (Count I), what the plaintiff calls wanton and willful conduct (Count II), breach of contract (Count III), breach of an implied covenant of good faith and fair dealing (Count IV) and wrongful discharge in violation of New Jersey's public policy (Count V). Jurisdiction is based upon diversity of citizenship and an amount in controversy in excess of $50,-000.00. Presently before the Court is McGraw–Hill's motion for summary judgment on all five Counts of plaintiff's complaint.

## I. Facts and Procedural History

Kapossy was employed by McGraw–Hill for twenty-two (22) years, most recently at the Hightstown, New Jersey facility of McGraw–Hill's subsidiary, Standard & Poors, as its General Manager of Applications Systems Development ("ASD"). ASD was the department responsible for maintenance of certain data systems, including the company's order-entry and billing system. Kapossy supervised a staff of five computer programmers and analysts.

Until early 1992, Kapossy reported to Tom Conneally, Director of Business Systems Development ("BSD"). In April or May, 1992, BSD was consolidated with another department and eliminated as a separate entity. At this time, Kapossy began reporting, through William McDade ("McDade"), Vice President of Technology, to John Kerin ("Kerin"), Standard & Poors' Senior Vice President of Technology and Operations.

Sometime in the Spring of 1992, Kerin decided to consolidate at least some of the functions previously performed by Kapossy and Alvaro Andraca ("Andraca"), Senior Project Director in the Equity Services Division, headquartered in New York City. According to McGraw–Hill, the merger of these two units resulted in the creation of a new position, Senior Project Director in charge of the combined organization.

On May 26 and 27, 1992, respectively, Andraca and Kapossy were interviewed by McDade for the Senior Project Director's position. In a memo dated May 28, 1992, McDade reported to Kerin that he believed Andraca to be the more qualified candidate. On June 4, 1992, Kapossy was told that Andraca had been selected for the new position and that Kapossy's position would be eliminated effective June 15, 1992. Kapossy was instructed to report directly to Kerin until November 1, 1992, when his employment with McGraw–Hill would terminate, unless he found another position within the company prior to that date. The November 1, deadline was subsequently extended by McGraw–Hill to December 31, 1992.

In June, or early July, 1992, Kapossy met with Ralph Denton ("Denton"), McGraw–Hill's Vice President of Human Resources, to review options for employment within the company. At about the same time, Kapossy also consulted with McGraw–Hill's Employment Manager, Hosie Scott, on interviewing techniques and resumé refinement.

In late October, 1992, Kapossy interviewed with Paul Malchow ("Malchow") for a position with the Project Information Management System ("PIMS"), a McGraw–Hill unit located in New York City, which Malchow headed. Kapossy was not selected. Ultimately, McGraw–Hill reached outside the company and hired Anatoly Kissen ("Kissen") to fill the PIMS position. McGraw–Hill contends that Kapossy was simply not qualified for the PIMS project. Kapossy claims that McGraw–Hill was obliged to give him additional training to prepare him for the PIMS position and that it did not offer him such training. Kapossy apparently did not interview for any other positions within

McGraw–Hill between June and December of 1992.

McGraw–Hill maintains that Kapossy was an "at will" employee and that the elimination of his position was the result of a necessary and legitimate "reduction in force." Plaintiff alleges that the "reduction in force" was a pretext for age discrimination and that Kapossy's duties were not assumed by Andraca, but were, instead, taken over by Richard Snook ("Snook") a McGraw–Hill employee at Hightstown, who is younger than Kapossy and whom Kapossy had previously supervised.

Kapossy also alleges that McGraw–Hill failed to provide him with the necessary training to qualify him for another position, training that was promised in the employee handbooks and procedures manuals. It is McGraw–Hill's practice to give all employees a copy of its handbook entitled "McGraw–Hill and You" (the "Handbook"). During his employment with McGraw–Hill, Kapossy was given several different versions of this Handbook. Sometime in 1985, McGraw–Hill added a disclaimer to the section of the Handbook entitled "About this Book." This disclaimer states that the Handbook "is not meant to impose any legal obligations upon either you or McGraw–Hill." Affidavit of Ralph Denton ("Denton Aff."), exhibit A.

Kapossy also received McGraw–Hill's Policies and Procedures Manual (the "Manual") which was given to all managerial employees. This Manual was revised and updated from time to time. Plaintiff contends that either one or both of these publications was reasonably construed by him to create an enforceable employment contract. In addition, Kapossy claims that the post–1985 disclaimers to the Handbook and Manual are ineffective to alter the terms of this contract. McGraw–Hill understandably urges that no contractual rights were ever created between it and the plaintiff and that Kapossy was at all times an "at will" employee. McGraw–Hill further contends that the post–1985 disclaimers are effective to defeat any assertion that an employment contract arose from the terms of either the Handbook or the Manual.

## II. Standard for Summary Judgment

A party seeking summary judgment must "show that there is no genuine issue as to any material fact and that [he] is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). *See also Hersh v. Allen Products, Co.,* 789 F.2d 230, 232 (3d Cir. 1986); *Lang v. New York Life Ins. Co.,* 721 F.2d 118, 119 (3d Cir.1983). In deciding whether there is a disputed issue of material fact the Court must draw all inferences from the underlying facts in favor of the non-moving party. *See Hancock Indus. v. Schaeffer,* 811 F.2d 225, 231 (3d Cir.1987) (citation omitted); *Pollock v. American Telephone & Telegraph Long Lines,* 794 F.2d 860, 864 (3d Cir.1986).

The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The substantive law governing the dispute will determine which facts are material, and only disputes over facts "that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248, 106 S.Ct. at 2510.

Once the moving party has properly supported its motion, "its opponent must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Nonetheless, defendant, McGraw–Hill, as the moving party on the motion, bears the ultimate burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986).

McGraw–Hill moves for summary judgment on each of the five counts in plaintiff's complaint. The court will therefore examine each count to determine whether there are any genuine issues of material fact and whether, given the evidence presented, a reasonable jury could find by a preponderance of the evidence in favor of the plaintiff.

## III. Count I—Violations Of The New Jersey Law Against Discrimination

■ The New Jersey Law Against Discrimination ("NJLAD"),[1] like the federal Age Discrimination in Employment Act ("ADEA"),[2] prohibits employers from basing hiring or other employment decisions on an individual's age.[3] In applying the NJLAD, the courts look to correlative federal law to supply the analytical framework and relevant standards for evaluating the claim. *See Abrams v. Lightolier Inc.*, 50 F.3d 1204, 1212 (3d Cir.1995) ("New Jersey courts in applying the NJLAD generally follow the standards of proof applicable under the federal discrimination statutes[.]"); *Maidenbaum v. Bally's Park Place*, 870 F.Supp. 1254, 1258 (D.N.J.1994), *aff'd*, 67 F.3d 291 (1995); *Giammario v. Trenton Bd. of Educ.*, 203 N.J.Super. 356, 361, 497 A.2d 199 (App.Div.), *certif. denied*, 102 N.J. 336, 508 A.2d 212 (1985).

■ There are two categories of cases which occur in the employment discrimination context. The first type, called the "mixed motive" case, is analyzed under the standards set forth in *Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989). In the typical "mixed motive" case, the plaintiff "offers 'direct evidence' of unlawful discrimination and the evidence as a whole permits a conclusion that both permissible and impermissible considerations played a role in the employer's decision, the plaintiff need only show that the unlawful motive was a substantial motivating factor in that decision." *Miller v. CIGNA Corp.*, 47 F.3d 586, 594 (3d Cir.1995). The burden, both of production and ultimate persuasion, then shifts to the defendant to show, by a preponderance of the evidence, that it would have taken the same employment action even if it had been free of the discriminatory motive. *Price Waterhouse*, 490 U.S. at 258, 109 S.Ct. at 1794–95.

■ Although Kapossy begins his brief in opposition to defendant's motion by arguing that his is a "mixed motive" case and that he should benefit from the *Price Waterhouse* allocation of burdens, he has simply produced no "direct evidence" of discrimination.

■ The second, and by far the larger category of employment discrimination cases, are so-called "pretext" cases.[4] In these cases, the burden of persuasion remains at all times with the plaintiff, who must prove, by direct or circumstantial evidence, that the adverse employment action was a result of discrimination. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 510–11, 113 S.Ct. 2742, 2749, 125 L.Ed.2d 407 (1993).

■ The familiar analytical framework for Title VII discrimination claims announced in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973), applies in "pretext" cases. In brief, *McDonnell Douglas* places the initial burden of production on the plaintiff to establish a *prima facie* case of discrimination. Once the plaintiff has established a *prima facie* case, the burden of production then shifts to the defendant to articulate a legitimate, non-discriminatory reason for its actions. *McDonnell Douglas*, 411 U.S. at 802–04, 93 S.Ct. at 1824–25. Ultimately, the plaintiff must show that the defendant's proffered reasons for its actions are not worthy of belief and that the defendant acted with the intent to discriminate. *Id.*

■ Once a plaintiff has made out a *prima facie* case of discrimination, however, he

1. N.J.Stat.Ann. §§ 10:5–1 to 5–38 (West 1976 & Supp.1995).

2. 29 U.S.C. §§ 621–634.

3. Section 10:5–12 prohibits age discrimination in employment. N.J.Stat.Ann. § 10:5–12 (West Supp.1995).

4. The Third Circuit has explained that "mixed motives" is a term of art which encompasses "only a small subset of all employment discrimination cases in which the employer may have

had more than one motive." *Miller*, 47 F.3d at 597 n. 9. This observation is important where, as here, the employer alleges that the dismissal was the legitimate result of economic considerations. The plaintiff need not prove that the employer's proffered reason is utterly without foundation, but may, instead, prevail by showing that "age played a role in the employer's decisionmaking process and that it had a determinative effect on the outcome of that process." *Id.*

or she may defeat a motion for summary judgment "by *either* (i) discrediting the proffered reasons, either circumstantially or directly, or (ii) adducing evidence, whether circumstantial or direct, that discrimination was more likely than not a motivating or determinative cause of the adverse employment action." *Fuentes v. Perskie,* 32 F.3d 759, 764 (3d Cir.1994).[5]

### A. Kapossy's Prima Facie Case

The elements of a *prima facie* case of age discrimination in employment vary slightly according to nature of the claim. Kapossy makes a two-pronged attack on McGraw–Hill, alleging that in the elimination of the ASD job, the so-called "reduction in force" was a mere pretext for age discrimination and, secondly, that his employer's failure to place him in another position within the company was similarly motivated by age-based discrimination. For the purposes of this Opinion, Kapossy's two separate theories of NJLAD violations shall be described as the "reduction in force" claim and the "failure to hire" claim.

In a case of dismissal for allegedly discriminatory reasons, as in Kapossy's "reduction in force" claim, a plaintiff must show that: (1) he or she is a member of the protected class; (2) he or she was qualified for the position; (3) he or she suffered adverse job action; and, (4) he or she was replaced by a sufficiently younger individual to permit a reasonable factfinder to infer age discrimination. *Chipollini v. Spencer Gifts, Inc.,* 814 F.2d 893, 897 (3d Cir.) (citations

omitted), *cert. denied,* 483 U.S. 1052, 108 S.Ct. 26, 97 L.Ed.2d 815 (1987); *Ezold v. Wolf, Block, Schorr & Solis–Cohen,* 983 F.2d 509, 522 (3d Cir.1992) (citations omitted), *cert. denied,* —— U.S. ——, 114 S.Ct. 88, 126 L.Ed.2d 56 (1993).

In cases alleging a "failure to hire" based upon age discrimination, the plaintiff must show that: (1) he or she belongs to the protected class; (2) he or she applied for and was qualified for the job; (3) despite being qualified, he or she was rejected; and (4) the employer either ultimately filled the position with someone sufficiently younger to permit an inference of age discrimination, or continued to seek applicants from among those having plaintiff's qualifications. *Fowle v. C & C Cola,* 868 F.2d 59, 61 (3d Cir.1989) (citations omitted). *See also Barber v. CSX Distribution Servs.,* 68 F.3d 694, 699 (3d Cir.1995) (ADEA plaintiff need not show that the successful candidate was someone who was not in the protected class, *i.e.,* below age 40, but must show that the beneficiary of the alleged discrimination is "sufficiently younger" to permit an inference of age discrimination).

McGraw–Hill does not contest that Kapossy is a member of the protected class. He was 54 years of age at the time he was notified of his termination.[6] Neither does McGraw–Hill dispute that either Andraca or Snook was sufficiently younger than Kapossy to support an age discrimination claim.[7] It is also undisputed that Kapossy suffered adverse job action.

---

5. This Court recognizes that there is an ongoing debate in this Circuit as to whether *Hicks* allows a plaintiff to survive summary judgment on the strength of his *prima facie* case combined with a showing of pretext (option (i) in *Fuentes* ), or whether, when "the defendant satisfies its production burden ... the court should decide whether ... the evidence ... taken together could persuade a reasonable trier of fact by a preponderance of the evidence that discrimination on the ground alleged was a determinative cause of the challenged action." *Sheridan v. E.I. duPont de Nemours & Co.,* 74 F.3d 1439, 1451 (3d Cir.1996), *vacated and reh'g in banc granted* (February 28, 1996). Until this debate is resolved through reconsideration *in banc* of the panel decision in *Sheridan,* this Court is bound to follow *Fuentes. Sheridan,* 74 F.3d at 1448.

6. Courts generally define the protected class as those persons forty years of age and older. *See, e.g., Seman v. Coplay Cement Co.,* 26 F.3d 428, 431 (3d Cir.1994); *Torre v. Casio, Inc.,* 42 F.3d 825, 830 (3d Cir.1994); *Gray v. York Newspapers, Inc.,* 957 F.2d 1070, 1078 (3d Cir.1992).

7. Courts have held that age differences of as little as five years can support a claim of age discrimination. *Douglas v. Anderson,* 656 F.2d 528, 533 (9th Cir.1981). In *Healy v. New York Life Ins. Co.,* 860 F.2d 1209 (3d Cir.1988), *cert. denied,* 490 U.S. 1098, 109 S.Ct. 2449, 104 L.Ed.2d 1004 (1989), the plaintiff introduced evidence that his duties were given to an employee nine years younger. *Id.* at 1212. The Third Circuit held that the plaintiff had made out a *prima facie* case of age discrimination. *Id.* at 1214.

Kapossy alleges two distinct adverse job actions, the dismissal itself, and McGraw–Hill's failure to hire him for another position. The contested elements of plaintiff's *prima facie* case vary according to the claims made. On the issue of whether McGraw–Hill "failed to hire" Kapossy because of age discrimination, the parties dispute whether Kapossy was qualified for the jobs for which he interviewed at McGraw–Hill, but which he did not receive. On the "reduction in force" claim, McGraw–Hill naturally contends that neither Andraca, nor Snook, "replaced" Kapossy.

In support of his "failure to hire" claim, Kapossy alleges that, because of age discrimination, he was denied training which would have prepared him for the other open positions at McGraw–Hill, *i.e.*, Andraca's position and the PIMS job ultimately filled by Kissen, or which would have allowed him to remain in the redefined Hightstown position filled by Snook. Because slightly different legal standards apply to these two facets of Kapossy's NJLAD claim contained in Count I, the Court will consider them separately.

### B. The "Failure to Hire" Claim

■ The Court will consider first Kapossy's claim that his employer's failure to place him in another position within the company was motivated by age discrimination. McGraw–Hill denies such discriminatory animus, and maintains that Kapossy was not qualified to assume the newly-created position ultimately given to Andraca, or to work in the PIMS project, or to remain in Snook's position. Therefore, the company argues, Kapossy has failed to make out a *prima facie* case of age discrimination based upon McGraw–Hill's failure to hire him for another position within the company.

Kapossy admitted at his deposition that he was not qualified for the job given to Andraca.[8] Nevertheless, Kapossy argues that although he was not qualified for Andraca's job, this resulted from age discrimination

practiced by McGraw–Hill. According to Kapossy, McGraw–Hill provided preferential training for its younger employees, specifically training provided to Andraca immediately prior to the decision to eliminate Kapossy's job, and training provided to Kissen, after he was hired to fill the PIMS position for which Kapossy interviewed. Indeed, Kapossy sought discovery from McGraw–Hill on the issue of alleged preferential training given to Andraca immediately prior to his selection for the Senior Project Director position, on the theory that, on account of his age, Kapossy was denied training that would have prepared him for that job. On June 15, 1995, Magistrate Judge Wolfson entered an order granting Kapossy's request for discovery of:

> all training received by Alvaro Andraca during the course of his employment at McGraw Hill, including the date time location and nature of training provided, for a period of one year prior to plaintiff's June 1992 termination, the Court finding that this discovery relates to plaintiff's allegation that defendant failed to offer him the same training as it offered Andraca.

Order of Wolfson, J., at 1–2. When counsel was asked at oral argument whether the discovery ordered by Judge Wolfson had revealed any evidence of preferential training given to Andraca and denied to Kapossy, Kapossy's counsel replied "nothing significant."[9]

Similarly, Kapossy alleges that the person ultimately hired by McGraw–Hill for the PIMS project, Kissen, was no better qualified than he, but was given training after hiring which, if offered to Kapossy, would have qualified him for the PIMS position. Yet Kapossy points to no particular training given by McGraw–Hill to Kissen. Kapossy also alleges that age discrimination played a role in McGraw–Hill's decision to give Snook additional responsibilities at Hightstown, instead of retaining Kapossy, but, once more, he has produced no evidence to support his

8. When asked at his deposition whether he was making a claim that he should have gotten Andraca's position in June 1992, Kapossy responded, "No, I don't." Affidavit of Kerry M. Parker ("Parker Aff."), exhibit A (Dep. of S. Kapossy at 87).

9. Moreover, at oral argument, counsel informed the Court that discovery was complete in this case and that a final pre-trial conference was scheduled before Magistrate Judge Wolfson on April 15, 1996.

allegation that Snook benefited from training not offered to him.[10] On the issue of "preferential training," proof of which is crucial to Kapossy's *prima facie* case on his "failure to hire" claim, he has failed to show the existence of any genuine issue of material fact.

Based upon Kapossy's own admissions in his deposition testimony, his counsel's concessions at oral argument regarding discovery, and the uncontradicted testimony presented by McGraw–Hill documenting the training which was available to Kapossy,[11] when viewed in the light most favorable to Kapossy, there are no genuine issues of material fact regarding Kapossy's lack of qualifications for the jobs for which he interviewed at the company. Therefore, as to plaintiff's claim that McGraw–Hill's failed to hire him for other positions in the company, based on age discrimination, Kapossy has failed to make out a *prima facie* case, and summary judgment must be granted to McGraw–Hill on this claim.

### C. The "Reduction in Force" at Hightstown

McGraw–Hill does not contend, and the record does not reflect, that Kapossy was unqualified for the position of General Manager of ASD, the position which was eliminated in the "reduction in force." Nevertheless, McGraw–Hill argues that Kapossy cannot establish a *prima facie* case of age discrimination based on the "reduction in force" at Hightstown. Central to Kapossy's claim, McGraw–Hill argues, is his contention that he was "replaced" by either Andraca or Snook. On the contrary, McGraw–Hill states that Kapossy's position was simply eliminated and its job functions distributed between Andraca and Snook.

 The Seventh Circuit has described the elements of a plaintiff's *prima*

facie case of age discrimination in a "reduction in force" situation as follows: (1) that he or she was in the protected class of persons forty to seventy years old; (2) that he or she was performing according to his employer's legitimate expectations; (3) that he or she was terminated; and (4) that others not in the protected class were treated more favorably. *King v. General Electric Co.*, 960 F.2d 617, 621–22 (7th Cir.1992); *see also Oxman v. WLS–TV*, 846 F.2d 448, 455 (7th Cir.1988). This formulation of the fourth element of a plaintiff's *prima facie* case, which does not require "replacement," is consistent with the Third Circuit's instruction that "the fourth element must be relaxed in certain circumstances, as when there is a reduction in force." *Torre v. Casio, Inc.*, 42 F.3d 825, 831 (3d Cir.1994). Under this statement of the legal standard, Kapossy can establish the final element of his *prima facie* case by showing that a younger person was treated preferentially. The record reveals that the reduction in force at the ASD at Hightstown resulted in the elimination of a single position, Kapossy's. The staff which Kapossy formerly managed, all younger than he, were spared. In fact, the "reduction in force" affected no one except Kapossy. When Kapossy "was terminated in the reduction in force, other, similarly-situated but younger employees were retained," specifically Andraca. *Id.* This is all that is required for Kapossy to make out his *prima facie* case of a discriminatory "reduction in force."

### D. Employer's Burden to Articulate a Non–Discriminatory Reason for the Termination

 Because Kapossy has made out a *prima facie* case of age discrimination resulting from McGraw–Hill's "reduction in force," the *McDonnell Douglas* analysis shifts the

---

**10.** Snook testified that, as of June of 1992, there was no technical training available and that "[y]ou've got to dig into it and learn it yourself." Schaer Certif. exhibit 36 at 182. However, Snook also testified that Tom Conneally had set up the network in Hightstown in 1990, to offer training in C, a programming language important in PC-based networks, and that Kapossy and another employee were given the opportunity to learn through self-study programs for which the company set aside time. Schaer Certif., exhibit

36 at 185–86. Notwithstanding this opportunity, Kapossy testified that he was not on the same "technical level" as Snook. Parker Aff., exhibit A at 39–40.

**11.** For example, McGraw–Hill offered its 1990 through 1992 Hightstown Training & Development Course Catalogue. Denton Supp.Aff., exhibit E.

burden to McGraw–Hill to present a legitimate, non-discriminatory reason for the elimination of the Hightstown ASD position. The Third Circuit has described the employer's burden in this context as "relatively light." *Fuentes*, 32 F.3d at 763. McGraw–Hill need only proffer, not prove, its reason for dismissing Kapossy. *Id.* McGraw–Hill claims that the elimination of Kapossy's position was necessitated by business efficiency. Defendant's Brief at 7. A business decision to reduce the work force is a legitimate one as long as it is not motivated by discriminatory animus. *Siegel v. Alpha Wire Corp.*, 894 F.2d 50, 54 (3d Cir.), *cert. denied sub nom. Alpha Wire Corp. v. Siegel*, 496 U.S. 906, 110 S.Ct. 2588, 110 L.Ed.2d 269 (1990). Therefore, McGraw–Hill has met its burden of production in this part of the *McDonnell Douglas* analysis.

### E. Evidence of Pretext in the "Reduction in Force"

Plaintiff contends that McGraw–Hill's proffered explanation for the elimination of his position, the "reduction in force," is a pretext, intended to disguise intentional age discrimination. In support of this assertion, Kapossy points to an April 27, 1992 telephone call. A contemporaneous message, apparently in Denton's handwriting, seems to discuss retaining Kapossy to age 55 and subsequent severance terms. Certification of Gregory S. Schaer, Esq. ("Schaer Certif."), exhibit 4, at 1.

Denton explains the reference to plaintiff's age in this message as a "recommendation for a special pension enhancement for Mr. Kapossy," which McGraw–Hill customarily granted to employees 55 and older whose positions were eliminated. Supplemental Affidavit of Ralph Denton ("Denton Supp.Aff.") ¶ 5. McGraw–Hill therefore asserts that the phone message and conversation are not material facts because they did not concern the decision to eliminate Kapossy's position.

However, Denton also states that he mistakenly testified at his deposition that he had spoken with Kerin about the special pension. *Id.* ¶ 2. In his affidavit, Denton claims that the telephone conversation discussing Kapossy's age was not with Kerin but with Robert Gemignani ("Gemignani"), Human Resources Manager for Kerin's New York operations. *Id.* ¶¶ 2–3. Because this telephone conversation took place at about the time that Kerin made his decision to consolidate ASD with Andraca's department, and well before the date on which Kapossy was informed of the decision to eliminate his position, it is a material fact in this case bearing on McGraw–Hill's motivation. It is all the more probative if it records a conversation with Kerin, the ultimate decisionmaker on the elimination of Kapossy's position. Denton states that he, in fact, had a telephone conversation with Kerin in April, 1992, but he was not then informed which candidate, Kapossy or Andraca, would be selected for the new position. *Id.* ¶ 4.

To discredit the employer's proffered reason for an adverse employment action, the plaintiff must demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions ... that a reasonable factfinder could rationally find them 'unworthy of credence.'" *Fuentes*, 32 F.3d at 765 (citing *Ezold*, 983 F.2d at 527). On the important issue of Kapossy's age as a motivating factor in McGraw–Hill's decision to eliminate the Hightstown position, there are apparent inconsistencies and unresolved factual disputes which preclude the entry of summary judgment on Count I of plaintiff's complaint, insofar as that Count alleges that the "reduction in force" was a pretext for age discrimination. However, at trial, Kapossy will be restricted to presenting evidence of age discrimination relating to the elimination of his position.

### IV. Count II—Allegation of Wanton and Willful Conduct

Count II of the complaint alleges that: "Plaintiff [sic] acts were done wantonly and willfully." Kapossy justifies this as "necessary ... to seek punitive damages from the defendant." Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment at 48 ("Plaintiff's Brief").

The parties agree, however, that punitive damages are available under the NJLAD upon a showing of the employer's partic-

ipation in or willful indifference to the wrongful conduct on the part of upper management, and that the offending conduct was "especially egregious." *Rendine v. Pantzer*, 141 N.J. 292, 314–15, 661 A.2d 1202 (1995). An NJLAD claim will only rarely support an award of punitive damages. *Id.*

At oral argument, plaintiff's counsel conceded that Count II of the complaint is duplicative of Count I. In view of this concession, the Court will dismiss Count II without prejudice to plaintiff's right to seek punitive damages in connection with his NJLAD claim contained in Count I.

## V. Count III—The *Woolley* Contract Claim

▆▆▆ In Count III, Kapossy alleges breach of an express or implied contract of employment. Defendant naturally contends that Kapossy was an "at will" employee. It is undisputed that Kapossy was never employed under an express contract of employment. Nevertheless, in New Jersey, an implied promise of job security contained in an employee handbook can give rise to an enforceable contract. *Woolley v. Hoffmann–La Roche, Inc.*, 99 N.J. 284, 491 A.2d 1257, *modified*, 101 N.J. 10, 499 A.2d 515 (1985). Specifically, in *Woolley*, the New Jersey Supreme Court held that absent a clear and prominent disclaimer, an implied promise contained in a widely distributed employment manual that an employee would only be fired for just cause was enforceable, despite the fact that employees otherwise were terminable at will. According to the *Woolley* court, "when an employer of a substantial number of employees circulates a manual that, when fairly read, provides that certain benefits are an incident of the employment ... the judiciary ... should construe them in accordance with the reasonable expectations of the employees." *Id.* at 297–98. Thus, Kapossy's *Woolley* contract claim presents two issues: (1) whether the disclaimer in the post–1985

Handbook is sufficient to negate any implied contract; and if not, (2) whether the terms of the McGraw–Hill Handbook or Manual can give rise to an employment contract.[12]

### A. The Disclaimers

▆▆▆ McGraw–Hill argues that its Handbook and Manual contained disclaimers which negate any implied employment contract. In *Nicosia v. Wakefern Food Corp.*, 136 N.J. 401, 643 A.2d 554 (1994), a unanimous New Jersey Supreme Court repeated the *Woolley* holding that an "effective disclaimer by the employer may overcome the implication that its manual constitutes an enforceable contract of employment." *Id.* at 412, 643 A.2d 554. The *Nicosia* court went on to enlarge upon the qualities of an "effective" disclaimer under *Woolley:*

1) the language of the disclaimer must be straightforward, eschewing legalese.

2) the disclaimer must be conspicuous; i.e., set off in bold type or italics, or underlined, or in a different color or within a border.

*Id.* at 414–15, 643 A.2d 554. *Nicosia* further holds that "[c]onspicuousness will always be a matter of law." *Id.*

The McGraw–Hill disclaimer fails this test. In the 1985 Handbook, the disclaimer appears in regular Roman type under a heading, "ABOUT THIS BOOK," which is in slightly larger type. Denton Aff., exhibit A. In the 1987 and 1989 versions, the disclaimer appears in substantially the same manner. *Id.*, exhibits B–C. In addition, the 1989 Handbook, in a section entitled "Terminations," states that employment "is 'at will' and may be terminated at any time by you or the company for any reason with or without prior notice or cause. Any oral statements or promises to the contrary are not binding upon the employee or employer." *Id.*, exhibit C. This statement also appears in regular Roman type.

---

12. Kapossy also claims that McGraw–Hill may be contractually bound by statements made in its Code of Business Ethics, in statements of its Equal Employment Opportunity Policy and by "past practices." Plaintiff's Brief in Opposition at 31–32, 35–37. This Court finds that, as a matter of law, the generalized conclusory statements of purpose contained in these documents do not give rise to contractual rights. *Tripodi v. Johnson & Johnson*, 877 F.Supp. 233, 240 (D.N.J.1995) (Corporate "Credo" which states general policies and goals of the company lacks the specificity required by *Woolley*.).

In the Manual, the disclaimer appears on a page entitled "ABOUT THIS MANUAL," again in regular Roman type. Ironically, this page contains an entire paragraph of underlined text, but it is not the paragraph containing the disclaimer. *Id.*, exhibit D.

Because these disclaimers fail as a matter of law to meet the *Woolley–Nicosia* criteria for "conspicuousness," this Court must determine whether the relevant provisions of the Handbook or the Manual might reasonably have created an employment contract between Kapossy and McGraw–Hill.

### B. The Terms of the Woolley Contract

■ As a threshold matter, this Court is required to determine whether *Woolley* may be applied retroactively to Handbooks and Manuals which predate the 1985 *Woolley* decision. McGraw–Hill argues that it may not be so applied. *See Grigoletti v. Ortho Pharmaceutical Corp.*, 118 N.J. 89, 118, 570 A.2d 903 (1990). Kapossy argues for a narrow reading of *Grigoletti* which would only bar the application of *Woolley* to cases where the challenged termination itself took place before *Woolley* was decided in 1985, but would allow this Court to consider evidence of pre–1985 versions of the Handbook and Manual in this post-*Woolley* termination case. *Grigoletti*, however, does not support this tortuous reasoning.

The New Jersey Supreme Court announced in *Grigoletti* that "[w]e have always understood that decisions establishing a new principle of law by overruling past precedent or resolving an issue of first impression in a way not foreshadowed by past decisions should not be granted retroactive application." *Id.* at 116, 570 A.2d 903. *Woolley* was not "foreshadowed," involving as it did, a "novel and unanticipated interpretation and application" of the law. *Id.* Moreover, considerations of notice and due process compel the conclusion that *Woolley* should be applied only to post–1985 employee handbooks. To do otherwise would penalize an employer who prepared an employee handbook in reli-

ance upon pre-*Woolley* law simply because of the fortuitous circumstance that the termination occurred after *Woolley* was decided. Therefore, this Court will consider on summary judgment only post-*Woolley* Handbooks and Manuals.

■ McGraw–Hill argues that *Woolley* only protects an employee from arbitrary dismissal and does not protect an employee from "elimination of the job itself due to legitimate economic or business reasons." *Linn v. Beneficial Commercial Corp.*, 226 N.J.Super. 74, 80, 543 A.2d 954 (App.Div. 1988). Indeed, it now appears that Kapossy does not assert a claim that the decision to eliminate his job was itself a breach of the *Woolley* contract. Plaintiff's Brief at 30, n. 15. Rather, Kapossy claims that the Handbook, and/or Manual, contained promises that, even if his job were eliminated, Kapossy would benefit from certain procedures, notably training and the best efforts of his superiors to place him within the company.

On the same day that it decided *Nicosia*, a unanimous New Jersey Supreme Court further reaffirmed *Woolley* in *Witkowski v. Thomas J. Lipton, Inc.*, 136 N.J. 385, 643 A.2d 546 (1994). There, the court held:

> "if a plaintiff can prove that an employment manual containing job-security and termination procedures could reasonably be understood by an employee to create binding duties and obligations between the employer and its employees, the manual will constitute, in effect, a unilateral offer to contract that an employee may accept through continued employment."

*Id.* at 399, 643 A.2d 546. Among the factors bearing on whether an employee may reasonably interpret an employee manual as a contract are "the definiteness and comprehensiveness of the termination policy and the context of the manual's preparation and distribution." *Id.* at 393, 643 A.2d 546.[13] The manual at issue in *Woolley* contained a "fairly detailed procedure to be used before an employee may be fired for cause." *Woolley*, 99 N.J. at 287 n. 2, 491 A.2d 1257. In other

---

**13.** As to the extent of distribution, the Handbook enjoyed the widest possible distribution, in that it went to each McGraw–Hill employee. The Manual was distributed only to management employ-

ees. Defendant's Statement of Material Facts Not In Dispute Pursuant to Local Rule 12G. ¶ 22.

cases, a non-exhaustive list of prohibited employee conduct paired with a progressive discipline procedure have been held sufficient to support a *Woolley* claim. *Witkowski, supra; Preston v. Claridge Hotel & Casino,* 231 N.J.Super 81, 555 A.2d 12 (App.Div.1989).

Kapossy points, as one example, to the following provision in the policy Manual: "If, in the manager's judgment, a reasonable amount of retraining cannot prepare the employee to handle the newly-structured position, termination becomes necessary." Denton Aff., exhibit D, (Manual ch. B § 5). Kapossy contends that this statement obligated McGraw–Hill to provide him with training which would have allowed him to compete with Andraca for the newly-created position before McGraw–Hill considered termination. By failing to provide this training, Kapossy argues, the company breached its *Woolley* contract.

McGraw–Hill argues that Kapossy was fully apprised of the possibility that his job might be eliminated through a "reduction in force," and it is true that "reduction in force" is defined in both the Handbook and the Manual. *See* Denton Aff., exhibits C & D. McGraw–Hill also points out that Kapossy was aware of the relevant company policies on continuing education and tuition reimbursement, policies which placed the onus on the employee to seek training. Denton Supp.Aff., exhibit D. Apparently, Kapossy, as a department manager, was partially responsible for administering the tuition refund program. Defendant's Reply Brief at 10.

McGraw–Hill also takes issue with plaintiff's reliance on the following section of the Manual:

*If The Number Of Employees In A Position Or Departmental Unit Is To Be Cut Back, In Contrast To Eliminating The Position Or Unit Completely, What Considerations Are Weighed In Selecting Which Employee Of The Group Is To Be Terminated.*

When designating employees who must be transferred or terminated, the choice will be governed by a combination of length of service and qualifications.

(a) Temporary employees will always be transferred or terminated first.

(b) As a general rule, long-service employees will be kept in the present unit rather than those with shorter service where the longer service persons qualify for existing jobs, assuming the longer-service employee desires to stay....

Denton Aff., exhibit D (Manual, 1992 rev., ch. B, sec. V, p. 2). Kapossy contends that McGraw–Hill breached this provision by failing to consider his length of service prior to terminating him. McGraw–Hill argues that this section of the Manual is inapplicable to the elimination of a single position in a single unit.

The words "in contrast to eliminating the position" are ambiguous. McGraw–Hill argues that this phrase removes from the purview of this section cases like Kapossy's in which the position, General Manager of ASD, is eliminated. However, it is also possible to read the language to mean "in contrast to the elimination of the *job classification* or unit completely." Read at this broader level of generality, Kapossy could qualify as one of a "number of employees in a position," *i.e.,* one of a number of systems development managers. Kapossy could reasonably believe that his job, but not his job classification, was eliminated. Indeed, Andraca was employed in the same general job classification.

Unfortunately for Kapossy, even if a contract is implied, this statement of policy would allow him only to displace temporary workers, of which there were none in his department, and those existing workers with shorter service, whom he was equally qualified for a remaining job. Again, in his own words, Kapossy was not qualified "on a technical level" for Snook's job at ASD in Hightstown. Parker Aff., exhibit A (Kapossy Dep. Tr. at 39–40). On balance, McGraw–Hill has the better of the argument over this section of the Manual.

Nevertheless, although *Woolley* and its progeny focus primarily on claims related to disciplinary procedures, there is no reason why *Woolley* should not protect an employee from the arbitrary denial of other terms of employment, such as promised training, when that denial leads directly to the employee's dismissal, at least as long as those

terms of employment are reasonably comprehensive. The relevant question is whether an employee reasonably believes that a particular personnel policy has been established and is applied consistently and uniformly to each employee. *Gilbert v. Durand Glass Mfg. Co., Inc.*, 258 N.J.Super. 320, 329–30, 609 A.2d 517 (App.Div.1992) (finding that an oral representation by the employer can support a *Woolley* claim). While Kapossy cannot claim, based on the Manual, to have expected to displace one of the remaining employees at ASD in Hightstown, he has raised a factual issue as to whether he could reasonably have expected to receive training prior to his dismissal.[14]

This Court is mindful that the New Jersey Supreme Court has approved the decision to submit the question of whether a *Woolley* contract exists to the jury in most instances. *Nicosia*, 136 N.J. at 416, 643 A.2d 554. Similarly, the Appellate Division of the Superior Court, in a *Woolley* action, held that summary judgment was inappropriate because "factual questions will persist concerning the meaning and intent of certain documents relevant to a decision under *Woolley*." *Giudice v. Drew Chemical Corp.*, 210 N.J.Super. 32, 36, 509 A.2d 200 (App.Div.), *certif. denied*, 104 N.J. 465, 517 A.2d 448, 449 (1986).

Although Kapossy apparently does not, indeed he cannot, make a claim that the elimination of his job was in breach of a *Woolley* contract, factual issues remain concerning the extent of McGraw–Hill's duty, if any, to provide him with appropriate additional training before termination. Because there exist genuine issues of material fact relating to the reasonable interpretation of certain provisions of the Handbook and Manual,

summary judgment on Count III will be denied.

## VI. Count IV—Breach of Implied Covenant of Good Faith and Fair Dealing

New Jersey recognizes an implied covenant of good faith and fair dealing in every contract. *Onderdonk v. Presbyterian Homes*, 85 N.J. 171, 182, 425 A.2d 1057 (1981). Courts imply a covenant of good faith and fair dealing in order to protect one party to a contract from the other party's bad faith misconduct or collusion with third parties where there is no breach of the express terms of the contract. *See Borbely v. Nationwide Mutual Ins. Co.*, 547 F.Supp. 959, 973 (D.N.J.1981). Naturally, in the absence of a contract there is no implied covenant. *Noye v. Hoffmann–La Roche*, 238 N.J.Super. 430, 570 A.2d 12 (App.Div.), *certif. denied*, 122 N.J. 146, 584 A.2d 218 (1990).

Kapossy asserts in his Brief in Opposition to this motion that even if the jury were to find that McGraw–Hill did not discriminate in terminating him, it could still find that it breached an implied covenant by acting in bad faith. Plaintiff's Brief at 47. Yet plaintiff does not recite a factual foundation upon which the jury could base this conclusion. Kapossy claims in Counts I and III of his complaint that McGraw–Hill discriminated against him because of his age and that it breached a *Woolley* contract with him by failing to train him for a suitable position within the company. Count IV of plaintiff's complaint incorporates the factual allegations of the prior counts, but alleges no independent facts. Indeed, at oral argument, when asked by the Court what Count IV added to this case, Kapossy's counsel conceded that the implied covenant claim would be sup-

---

**14.** There is no inconsistency between the conclusion that Kapossy may proceed with his *Woolley* claim, while his NJLAD claim alleging a "failure to hire" is dismissed. Kapossy's *Woolley* claim depends upon a jury's finding that McGraw–Hill, through its Handbooks or Manuals, promised to train Kapossy before terminating him. For Kapossy to have prevailed on his NJLAD "failure to hire" claim, would have required a showing that he was qualified for the other positions for which he interviewed, without additional training, or that needed training was denied him as a result of discrimination, neither of which Kapossy could establish. McGraw–Hill's contention that

Kapossy was unqualified for the jobs he sought at McGraw–Hill was unrefuted, and that lack of qualification doomed Kapossy's "failure to hire" theory. Beyond that, Kapossy offered no evidence that younger employees received "preferential training." The conclusion that McGraw–Hill did not discriminate on the basis of age in offering training, or in hiring for the jobs at issue, however, does not address the question whether McGraw–Hill is obliged, by the language in its Handbook or Manual, to take certain steps before terminating an employee in Kapossy's position.

ported by the same proofs as Counts I and III, and, if proven, would involve no new element of damages.

In his brief, Kapossy argues that a breach of the covenant of good faith and fair dealing would properly lie "if the jury finds that the defendant have [sic] used age discrimination as a pretext for terminating plaintiff." Plaintiff's Brief at 47. This, however, is precisely what Count I of the complaint alleges.

Since Count IV is wholly duplicative of the claims, proofs, and alleged damages asserted in Counts I and III of the complaint, summary judgment will be granted as to Count IV.

## VII. Count V—Wrongful Termination in Violation of Public Policy

■ Count V of Kapossy's complaint alleges that his termination was in violation of New Jersey's public policy. To enjoy protection under this common law cause of action, employee rights must flow from a "clear mandate" of public policy. Some potential sources for such a mandate include: legislation; administrative rules, regulations, judicial decisions and certain professional codes of ethics. *Pierce v. Ortho Pharmaceutical Corp.*, 84 N.J. 58, 417 A.2d 505 (1980).

■ The parties agree that a common law claim for wrongful termination is not viable insofar as it seeks the same remedy available under the NJLAD. *Catalane v. Gilian Instrument Corp.*, 271 N.J.Super. 476, 491–92, 638 A.2d 1341 (App.Div.1994). *Catalane* holds that the New Jersey legislature, by providing a remedy in the NJLAD, intended to preempt any public policy cause of action based on the same facts which support the discrimination claim. *Id.* at 492, 638 A.2d 1341.

Kapossy does not dispute the holding of *Catalane.* However, in a letter dated Octo-

ber 19, 1994, plaintiff refused to stipulate to the dismissal of Count V. In this letter, Kapossy, apparently for the first time, asserted that the relevant public policy which was allegedly violated by McGraw–Hill could be found in the Older Workers Benefit Protection Act. 29 U.S.C. § 626(f), ("OWBPA").[15] Indeed, this position is advanced in Kapossy's Brief in Opposition to the instant motion. Plaintiff's Brief at 44–45.

The OWBPA provides, in relevant part: "An individual may not waive any right or claim under [ADEA] unless the waiver is knowing and voluntary."[16] The Act goes on to enumerate minimum requirements which a waiver must meet in order to be deemed "knowing and voluntary."[17] Nowhere in plaintiff's complaint does he claim that he was asked to sign a waiver of his right to sue under the ADEA.

■ Moreover, even assuming the existence of such a waiver, Kapossy makes no claim to have been injured by McGraw–Hill's alleged violations of the OWBPA. The absence of any allegation of an injury that could be associated with defendant's alleged failure to follow the mandate of the OWBPA calls into question the jurisdiction of this Court. Federal courts under Article III are limited to the adjudication of actual cases and controversies. Without an injury, there is no actual case or controversy. *See Lawrence v. National Westminster Bank,* Civ.A. No. 94–1368, 1995 WL 506043 at *8 (D.N.J. Aug. 16, 1995).

Moreover, plaintiff has not demonstrated to this court that a violation of OWBPA will support a common-law cause of action for wrongful discharge in violation of public policy. Section 626(f)(3) provides that whenever a waiver is challenged for failure to adhere to the requirements set forth in Section

---

**15.** Act of Oct. 16, 1990, P.L. 101–433, 104 Stat. 983 (as codified at 29 U.S.C. § 626(f)).

**16.** 29 U.S.C. § 626(f)(1).

**17.** In his brief, Kapossy claims that McGraw–Hill violated two subsections of the Act: (1) 29 U.S.C. § 626(f)(1)(F)(ii), which requires that each individual in a group or class of employees in a termination program be given 45 days to consid-

er the termination agreement containing the waiver; and, (2) 29 U.S.C. § 626(f)(1)(H)(ii), which requires employers to give each member of a group or class of employees the "job titles and ages, of all individuals eligible or selected for the program, and the ages of all individuals in the same job classification or organizational unit who are not eligible or selected for the program." *Id.*

626(f)(1), including those cited by Kapossy, then "the party asserting the validity of the waiver shall have the burden of proving in a court of competent jurisdiction that a waiver was knowing and voluntary." 29 U.S.C. § 626(f)(3).[18] Moreover, Kapossy has not sued under the ADEA, McGraw–Hill has not offered any waiver in defense of such a suit, and Kapossy has not asserted the invalidity of such a waiver.

For these reasons, plaintiff's OWBPA claim fails as a matter of law and the Court will grant defendant's motion for summary judgment as to Count V of the complaint.

## VIII. Summary

For the reasons set forth above, defendant's motion for summary judgment will be denied as to plaintiff's claim, in Count I, for violation of the NJLAD arising out of McGraw–Hill's "reduction in force" at the Hightstown office of Standard & Poors. Summary judgment will be granted, however, on plaintiff's claim, also alleged in Count I, that McGraw–Hill's "failure to hire" him for another position within the company was motivated by age discrimination.

Count II will be dismissed without prejudice to plaintiff's right to seek punitive damages in connection with his remaining NJLAD claim in Count I. Defendant's motion for summary judgment on Count III of plaintiff's complaint, alleging breach of a *Woolley* contract, will be denied. Summary judgment will be granted as to Counts IV and V.

An appropriate order memorializing these rulings will be entered by the Court.

## ORDER

This matter having come before the Court on March 15, 1996, on the Motion of defendant, McGraw–Hill, for Summary Judgment as to each Count of plaintiff's complaint, Gregory S. Schaer, Esq. of the Law Offices of Linda B. Kenney appearing on behalf of the plaintiff, and Kerry M. Parker, Esq. of Crummy, Del Deo, Dolan, Griffinger & Vecchione, appearing on behalf of the defendant, and the Court having considered the oral argument of counsel, as well as the briefs, depositions, answers to interrogatories and affidavits on file, for the reasons set forth in this Court's OPINION, filed concurrently with this ORDER,

It is on this 21st day of March, 1996, ORDERED that:

1. Defendant's motion for summary judgment on Count I, insofar as it states a claim for failure to hire, transfer or otherwise place plaintiff within the defendant's company in violation of the New Jersey Law Against Discrimination, is GRANTED; and,

2. Defendant's motion for summary judgment on Count I, insofar as it states a claim for a violation of the New Jersey Law Against Discrimination based upon a "reduction in force" termination, is DENIED; and,

3. Count II of plaintiff's complaint is dismissed without prejudice to plaintiff's right to seek punitive damages in connection with his remaining claim alleging a violation of the New Jersey Law Against Discrimination in Count I; and,

4. Defendant's motion for summary judgment on Count III of plaintiff's complaint is DENIED; and,

5. Defendant's motion for summary judgment on Counts IV and V of plaintiff's complaint is GRANTED.

---

**18.** "Congress could have, but did not, create a private right of action for violation of the OWB-PA." *Lawrence,* 1995 WL 506043 at *8. *Lawrence* refuses to recognize such a private right, and this Court declines plaintiff's invitation to imply one indirectly through a "public policy" claim. *See id.*