John Hancock Mutual Life Insurance Company, of Boston, Massachusetts, complainant-appellant,

*v.*

Noreen Cronin, defendant-respondent.

[Submitted October 1st, 1946.   Decided February 3d, 1947.]

Messrs. Nugent & Rollenhagen (Mr. John P. Nugent, of counsel), for the complainant-appellant.

Messrs. Milton, McNulty & Augelli (Mr. Joseph Keane and Mr. Walter E. McInerney, of counsel), for the defendant-respondent.

The opinion of the court was delivered by

WACHENFELD, J.

A life insurance policy of $10,000 was issued by the appellant. The beneficiary widow, the respondent in this case, instituted an action at law after the death of her husband to recover the amount due on the policy in question. The company filed an answer and counter-claim alleging misrepresentation. It then filed the present bill of complaint restraining the action at law and asking for a rescission of the contract, having tendered to the widow a return of the premiums paid.

Application for the insurance policy was made on December 5th, 1941, and the policy was issued on January 22d,

1942, although it was dated December 5th, 1941. The first premium was paid on the same date, to wit, on the date of the application. The insured died on September 27th, 1943. one year and ten months after the issuance of the policy. The opinion below found that he died of coronary thrombosis while the death certificate introduced in evidence recites:

"Immediate cause of death:
Coronary Thrombosis ? ?
Acute cardiac dilatation
Over exertion and
extreme nervousness"

The appellant contends the decedent in his application for insurance misrepresented material facts. They may briefly be set forth as follows: (1) decedent indulged in intoxicants while his application says that he did not; (2) he had been treated by a doctor within five years prior to the date of the application, which was denied in his application; (3) he had been in a hospital for treatment within the same period of time, while his application says that he had not been under treatment within this period of time.

The answer to the bill denies the misrepresentations and asserts the insurance company had knowledge of the actual facts, notwithstanding the application, and that no fraud existed because the appellant did not rely upon the misrepresentations but based its action upon an independent investigation. The full information the company obtained in this independent investigation is covered in a report dated December 17th, 1941, known as the O'Hanlon report.

The issues arise as follows: the application shows (1) the decedent to have been a stock broker while the O'Hanlon report shows the decedent to have been unemployed; (2) that the decedent did not drink while the O'Hanlon report discloses he did drink, saying that he was a moderate indulger and took an "occasional high ball;" (3) that in answer to Question 17: "Have you consulted or been treated by a physician or other practitioner during the past five years?" the insured answered: "No;" and in answer to Question 18: "Have you ever received, or applied for treatment at, or at-

tended, any hospital, dispensary, sanitarium, cure, or other institution?" the insured replied: "Yes." The application then provides if the answer to any of the above questions is "Yes" "specify every illness * * * operation, with dates, duration, severity, results, the names and addresses of any physicians or other practitioners, and hospitals, &c.," to which the applicant replied: "Appendectomy 1924, Dr. McLoughlin St. Francis Hosp."

The first two points are immaterial and of no consequence. As to the third, the O'Hanlon report discloses an investigation was made of the decedent's past medical history which showed the past health history included the appendectomy "over 15 years ago" and the fact that a brother of the applicant had tuberculosis, which was also stated in the application made. The O'Hanlon report also has the following inquiry: "Do you regard applicant as a desirable life insurance risk?" and the report answers: "Yes—remarks."

As contrasted with this situation, the proof shows the insured was attended by a Dr. Frank J. McLoughlin on April 2d, 6th and 30th, 1940, December 3d, 4th and 5th, 1940, and January 17th, 1942. The insured suffered, according to this doctor's testimony, from a mild form of stomach trouble and extreme nervousness. On December 3d, 1940, he was admitted to the St. Francis Hospital, Jersey City, because he had taken an overdose of sedative medication. At the hospital he was treated for a stomach condition and extreme nervousness. He was discharged on December 5th, 1940.

On April 11th, 1941, the insured was attended by Dr. Benjamin N. Schenker, who was called by the insured's father and mother. This doctor found the insured in "pretty bad shape," "seeing things," "carrying on," "stripped;" "* * * the sheets were torn, and everything else." A provisional diagnosis of delirium tremens was made and the doctor directed the insured be admitted to the Jersey City Medical Center. He was assigned to the psychopathic ward, where he remained under treatment for three weeks.

The court found material misrepresentations but concluded from the testimony that the appellant relied upon its own

investigation as shown in the O'Hanlon report and not upon the decedent's application.

If it is factually established that the appellant did not rely upon the misrepresentations made even though they were material, the company is not entitled to relief. If, on the contrary, the policy of life insurance was issued on the written application and the company relied upon the statements made therein in respect to the physical condition and the attendance upon the applicant by physicians, it cannot successfully be contended that the insurance company was not thereby induced to issue its contract of insurance.

"There is nothing mysterious about a policy of life insurance. It is a contract. The contract is based upon facts regarding age, health and disease. When facts are called for which are required to be given by the insured, and signed answers to questions are returned as a basis for making the contract, fair dealings require that the answers so made should be true. A material false representation in the answers purposely made is a reason for the avoidance of the policy on the ground of fraud." *Brunjes* v. *Metropolitan Life Insurance Co., 91 N. J. Law 296.*

*R. S. 17:34–15 (d)* provides that all statements made by the insured in the application shall be deemed "representations" and not "warranties," but this does not alter the situation where the representations were knowingly false and purposely made.

With this posture of the proof we must come to the conclusion that the representations were false and material and purposely made, leaving open only the question as to whether or not they were relied upon by the appellant.

Wesley Wilmot, supervisor of the insurance company's medical department, testified the contract was made and based upon the statements given by the applicant. His approval was final medically and when given he had before him the statements of the insured and the findings of the medical examiner but no knowledge of the O'Hanlon report. In reference to Miss Hird in the underwriting department, who gave final approval, the Vice-Chancellor held she had the decisive word of approval or rejection, and she in effect ad-

mitted that her decision would be determined by the contents of the O'Hanlon report.

We are not in accord with this conclusion. It is obvious from the testimony of this witness she took both into consideration and if they did not agree she would reject the application for insurance. When asked what she was guided by, she said: "By a combination, Part A, the statements of the examiner. And since it coincides with what is in here, we accept it."

Again: "Question: In other words, you read them all together, is that the idea? Answer: Yes, and they all agreed.

"Question: If they don't agree would you reject the application for insurance? Answer: I probably would have."

She certainly had no more knowledge than was contained in the O'Hanlon report, and this has no information about the insured's having been treated by physicians shortly prior to the time of his making his application or that he was in bad shape, very nervous, suffering from delirium tremens and had been confined to the psychopathic ward of a hospital. If these disclosures had been made by the insured—and he was obligated to make them—his application would have been refused. The fraud consisted of the insured's failure to disclose the attendance by physicians and the hospitalization within the time inquired of, concerning which the appellant gained no knowledge from the O'Hanlon report.

The law governing independent investigations seems clearly to have settled the principle that when one undertakes to make an independent investigation and relies upon it, he is presumed to have been guided by it and be bound accordingly. One cannot secure redress for fraud where he acted in reliance upon his own knowledge or judgment based upon an independent investigation. As expressed in *Parker* v. *Hayes, 39 N. J. Eq. 469:*

"A false representation made to a person who knows it to be false is not, in legal estimation, a fraud."

In *Berger* v. *Harrison Improvement Co., 108 N. J. Eq. 558,* the court dealt with an inquiry "negligently made or not pursued to a proper conclusion," and in *Condon* v. *Sanhowe, 97 N. J. Eq. 204,* the investigator was charged with "what it

is reasonable to assume they found, or could have found, if their investigation was made with * * * care and completeness * * *."

The respondent's brief contends that the appellant, having made an investigation, became "chargeable with knowledge of any and all facts, *which were then in existence* * * *." This rule is too broad. It is only where the independent investigation discloses the falsity of the material representations or the source of the information is revealed by the insured where the parties are not in an equal position to know the facts, and in either event the knowledge gained or which could have been gained by the exercise of reasonable diligence is substituted for the insurance application, that the appellant is precluded from relying upon the misrepresentations in the application. The mere fact that an insurer makes an investigation does not absolve the applicant from speaking the truth nor lessen the right of the insurer to rely upon his statements, unless the investigation discloses facts sufficient to expose the falsity of the representations of the applicant or which are of such a nature as to place upon the insurer the duty of further inquiry.

We find that misrepresentations were made by the insured; they were material and purposely made and were relied upon by the company. The independent investigation voluntarily undertaken by appellant did not disclose any facts from which the company knew or could by reasonable diligence have known of the true nature of the misrepresentations.

In suits for rescission the complainant is required to act promptly upon discovery of fraud or misrepresentation. The defense of laches is not set up in the answer and the burden of proving it is upon him who asserts it. The status of the parties in this litigation is the same now as it was at the time of the insured's death. The record is barren as to when the appellant became cognizant of the true situation. The respondent says: "There is no proof in the record as to the date upon which the complainant obtained knowledge of these incidents," and the appellant says: "The true facts regarding insured's previous health, medical attention, and hospitalization were never known to it until after his death." There is

nothing in the proof to indicate a delay on the part of the appellant which would bar it from the relief asked for.

The decree below will be reversed.

*For affirmance*—PARKER, DILL, JJ. 2.

*For reversal*—THE CHIEF-JUSTICE, BODINE, DONGES, HEHER, PERSKIE, COLIE, WACHENFELD, EASTWOOD, WELLS, RAFFERTY, FREUND, McGEEHAN, JJ. 12.