**In re HOUSE OF DRUGS, INC., Debtor.**

**House of Drugs, Inc., Plaintiff,**

**v.**

**RD Elmwood Associates, et al., Defendant.**

Bankruptcy No. 97–43129(WHG). Adversary No. 98–2007.

United States Bankruptcy Court, D. New Jersey.

July 27, 2000.

Melinda D. Middlebrooks, Middlebrooks & Shapiro, Parsippany, NJ, for plaintiff.

Dennis G. Harraka, Ferrara, Turitz, Harraka & Goldberg, Hackensack, NJ, for defendant.

## OPINION

WILLIAM H. GINDIN, Bankruptcy Judge.

### PROCEDURAL HISTORY

The within matter is an adversary proceeding brought by debtor, House of Drugs, Inc. (hereinafter "debtor" or "House of Drugs") against RD Elmwood Associates, L.P. (hereinafter "RD Elmwood"). The issue before the court is whether or not RD Elmwood committed fraud or violated New Jersey's implied covenant of good faith and fair dealing, by failing to disclose to House of Drugs the status of two tenancies contained within its property.

This court conducted a hearing on this matter on February 10 and 11, 2000, and reserved decision. Counsel for both parties submitted supplemental memoranda.

This court finds, for the reasons set forth below, that (1) RD Elmwood did not violate New Jersey's implied covenant of good faith; and (2) RD Elmwood did not commit fraud as the debtor failed to establish that it relied upon the alleged misrepresentation and subsequently incurred damages.

This court has jurisdiction over this matter pursuant to 28 U.S.C. § 157(b)(2)(A). To the extent that this determination constitutes a non-core determination, this opinion shall constitute a report and recommendation pursuant to 28 U.S.C. 157(c)(1).

### FACTS

In 1957, Jerome Koizim ("Jerome") founded House of Drugs, a pharmacy and Hallmark card store in Kearny, New Jersey. Jerome sold the Kearny store in February 1996. At the time of sale, Jerome's children, Michael Koizim ("Koizim") and Sherry Selzer, were overseeing the daily operations of the store. Harold Selzer ("Selzer"), Sherry Selzer's husband and a CPA, was a stockholder. Jerome allowed his children to use the proceeds of the sale to purchase and operate another store. They planned to purchase a business within six months of the sale of the Kearny store in order to avoid paying the capital gains tax. This is known as an "in-kind exchange."

In June 1996, debtor became interested in purchasing Molk Card and Gifts, located in the Elmwood Park Mall (the "Mall") in Elmwood Park, New Jersey. The store was owned by the Molk Brothers, Inc. ("Molk Brothers"). The debtors investigated the benefits of acquiring the Molk Brothers' lease. Specifically, on several occasions debtor observed traffic patterns throughout the mall. Debtor observed that the Mall was often so crowded that parking spots were difficult to find. Debtor also reviewed the Molk Brothers' financial records and evaluated sales volume. They were given an incorrect footprint of the mall premises. Michael Koizim had a business education as well as experience. Selzer was a Certified Public Accountant. The debtor was represented by counsel, who participated in drafting the contract.

Debtor agreed to purchase Molk Card and Gifts for $1,310,000, which consisted of a cash payment of $400,000 and two promissory notes of approximately $600,000 and $310,000. The $310,000 promissory note was assigned to the value of the Hallmark distributorship. Hallmark refused approval to debtor to continue as a Hallmark distributorship, but allowed debtor to continue selling Hallmark cards until January 1997. The debtors subsequently acquired a distributorship for Carlton Cards.

In August 1996, debtor advised RD Elmwood of its intention to assume the Molk Brothers' lease. RD Elmwood had been the owner of the Mall since 1994. The lease term was for a period of twelve years, beginning in 1996, and provided for a base rent of $25.64 per square foot with cumulative bi-annual increases to $29.72 in years eleven and twelve. In addition, the lease granted to RD Elmwood a percentage of all gross sales over $1.7 million. RD Elmwood was not willing to negotiate the price and terms of the lease.

During negotiations, debtor neither asked the landlord for permission to review the leases of the existing tenants, nor inquired as to whether or not any tenants were leaving the Mall in the near future. RD Elmwood discussed with debtor its plans to improve Elmwood Park. RD Elmwood did not, however, inform debtor of its plan to execute an early lease termination agreement with Rickels, one of the largest stores in the mall. Rickels held a going out of business sale and vacated the premises on or about October 31, 1996. Defendants also did not alert debtor to the fact that McCrorys' lease would expire in January 1997. McCrorys was another large store in the Mall. Both Rickels and McCrorys were in bankruptcy at the time their respective leases expired. Debtor assumed the Molk Brothers' lease on August 22, 1996, exactly six months after the debtors sold the Kearny store. On November 12, 1997, debtor filed its chapter 11 bankruptcy petition. On January 6, 1998, debtor filed the instant adversary proceeding against RD Elmwood.

Debtor asserts that RD Elmwood both (1) violated the covenant of good faith and fair dealing, and (2) committed actionable fraud, by failing to disclose to debtor the imminent departure of Rickels and McCrorys, two of the mall's largest stores. Debtor seeks relief from the contract in the form of rescission, reformation, or equitable estoppel.

In contrast, RD Elmwood alleges that it was under no duty to disclose the vacancies. In addition, RD Elmwood maintains that debtor's fraud claim must fail as debtor did not rely upon the alleged material omission.

### DISCUSSION

**Covenant of Good Faith and Fair Dealing**

New Jersey imputes an implied covenant of good faith and fair dealing into every contract. *Onderdonk v. Presbyterian Homes*, 85 N.J. 171, 182, 425 A.2d 1057 (1981). Debtor cites *Kapossy v. McGraw–Hill, Inc.*, 921 F.Supp. 234 (D.N.J.1996), for the proposition that "[c]ourts imply a

covenant of good faith and fair dealing in order to protect one party to a contract from the other party's bad faith misconduct or collusion with third parties where there is no breach of the express terms of the contract." *Id.* at 248. In *Palisades Properties, Inc. v. Brunetti*, 44 N.J. 117, 207 A.2d 522 (1965), the New Jersey Supreme Court described the covenant of good faith and fair dealing in the following manner:

> [T]erms may be implied in a contract, not because they are reasonable, but because they are necessarily involved in the contractual relationship so that the parties must have intended them ... In every contract there is an implied covenant that 'neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract'; in other words, in every contract there exists an implied covenant of good faith and fair dealing. *Id.* at 130, 207 A.2d 522 (citations omitted).

Debtor asserts that RD Elmwood breached New Jersey's implied covenant of good faith and fair dealing by failing to disclose the imminent vacancies at the Mall. The cases relied upon by debtor in support of this argument are inapposite. Indeed, debtor has not relied upon any case where the covenant is applied in situations involving the failure of a party to disclose conditions precedent to a contract. Instead, the case cited by debtor, *Kapossy, supra*, as well as its predecessors, concerned situations whereby one party to a contract behaved in a manner that was detrimental to the other contracting party, subsequent to the formation of the contract. *See, e.g. Onderdonk*, 85 N.J. 171, 425 A.2d 1057 (Retirement community administrator violated fiduciary duty to residents); *Palisades Properties, Inc. v. Brunetti*, 44 N.J. 117, 207 A.2d 522 (1965) (Municipality violated zoning agreement by amending terms to benefit another party); *Borbely v. Nationwide Mut. Ins. Co.*, 547 F.Supp. 959 (D.N.J.1981) (Employer violated employment contract by closing branch offices).

This court concludes that debtor's implied covenant of good faith and fair dealing claim has no merit. Debtor has failed to cite any case where the covenant of good faith and fair dealing is employed to either rescind or modify the terms of a contract in a "failure to disclose" situation. Additionally, debtor's good faith and fair dealing claim is predicated upon the same evidence as its fraud claim. As will be discussed below, this court further concludes that RD Elmwood did not engage in fraud by failing to disclose material information to debtor.

**Fraud**

Contracts are subject to rescission when they are procured by fraud. *Merchants Indem. Corp. v. Eggleston*, 37 N.J. 114, 179 A.2d 505 (1962). In order to establish legal fraud, a plaintiff must prove the following elements: "(1) a material representation by the defendant of a presently existing or past fact; (2) knowledge or belief by the defendant of that representation's falsity; (3) an intent that the plaintiff rely there on; (4) reasonable reliance by the plaintiff on the representation; and (5) resulting damage to the plaintiff." *New Jersey Economic Development Authority v. Pavonia Restaurant, Inc.*, 319 N.J.Super. 435, 445–46, 725 A.2d 1133 (App.Div.1998); *See also Jewish Center of Sussex County v. Whale*, 86 N.J. 619, 624, 432 A.2d 521 (1981) ("A misrepresentation amounting to a legal fraud consists of a material representation of a presently existing or past fact, made with knowledge of its falsity and with the intention that the other party rely thereon, resulting in reliance by that party to [its] detriment"); *John Hancock Mut. Life Ins. Co. of Boston, Mass. v. Cronin*, 137 N.J.Eq. 586, 588, 46 A.2d 71 (1946) ("The complainant ... is required to show (1) false representations of fact; (2) reliance upon the false representations, and (3) that the false representations were material"). Equitable fraud, unlike legal fraud, does not require knowledge of the falsity of the representation. The plaintiff, however, must establish the

presence of the other four elements. *Baldasarre v. Butler*, 254 N.J.Super. 502, 521, 604 A.2d 112 (App.Div.1992), *rev'd in part on other grounds*, 132 N.J. 278, 625 A.2d 458 (1993). The elements of fraud must be proven by clear and convincing evidence. *Id.; See also Berman v. Gurwicz*, 189 N.J.Super. 89, 101, 458 A.2d 1311 (Ch.Div. 1981); *Pavonia Restaurant, Inc.*, 319 N.J.Super. at 445, 725 A.2d 1133.

■ As stated above, debtor asserts that RD Elmwood committed fraud by failing to disclose material information during the negotiations concerning the assumption of the lease. An omission may constitute a material representation for the purposes of determining fraud. *See Pavonia Restaurant, Inc.*, 319 N.J.Super. at 446, 725 A.2d 1133 (holding that "deliberate suppression of a material fact that should be disclosed . . . is equivalent to a material misrepresentation, for purposes of fraud claim . . ."); *Jewish Center of Sussex County v. Whale*, 165 N.J.Super. at 89, 397 A.2d 712 ("The suppression of truth, the withholding of the truth when it should be disclosed, is equivalent to the expression of falsehood"); *Bonnco Petrol, Inc. v. Epstein*, 115 N.J. 599, 610, 560 A.2d 655 (1989) ("Silence in the face of an obligation to disclose amounts to equitable fraud").

■ The outcome of this suit is not dependent upon whether or not RD Elmwood had a duty to disclose the information. Rather, the basis for success in a suit involving a claim of fraud is that the plaintiff must have relied upon the misrepresentation. *See Cronin*, 137 N.J.Eq. at 586, 46 A.2d 71. New Jersey law does not impose upon a party to an arm's length transaction a general duty of inquiry. Accordingly, during negotiations a party may accept another party's representations as truth. A party that elects to make an independent investigation, however, will be accountable for everything such party could have discerned by employing reasonable diligence. *John Hancock Mut. Life Ins. Co. of Boston, Mass. v. Cronin*, 139 N.J.Eq. 392, 398, 51 A.2d 2 (1947). Put differently, if upon conducting an investigation the representee learns facts such that he is alerted to the falsity of the representor's statements, he will be barred from seeking relief.

In *Berman v. Gurwicz*, 189 N.J.Super. 89, 458 A.2d 1311 (Ch.Div.1981), the defendant vendor failed to disclose to the condominium unit purchasers that a recreation lease would be automatically included in the purchasing contracts. The recreation lease obligated the purchasers to pay rent for the use of various recreation facilities for a period of ninety (90) years. In conducting its analyis, the court divided the purchasers into two categories: (1) condominium unit purchasers represented by legal counsel; and (2) condominium purchasers not represented by counsel. The court determined that "[t]he existence of the recreation lease, which imposed substantial financial burden upon buyers, was material and adverse." *Id.* at 95, 458 A.2d 1311. The court further determined that the existence of the recreation lease was not apparent from an inspection of the condominium complex. Thus, as to those purchasers not represented by counsel, the court ruled that the leases would be set aside.

On the other hand, the court determined that the purchasers who were represented by counsel did not reasonably rely upon the vendor's omission. The court held that those agreements should have been properly examined by their attorneys. As in the instant case, such an examination by the attorneys constitutes an independent investigation. *Id.* at 102, 458 A.2d 1311. Moreover, the court opined that "the agreements were so worded as to permit the subjection of the condominium units to the lease in question." *Id.* The court therefore concluded that " '[there can be no recovery where] investigation discloses facts sufficient to expose the falsity of the representations . . . or which are of such a nature as to place upon the . . . [plaintiff] the duty of further inquiry.' " *Id.* quoting *Cronin*, 139 N.J.Eq. at 398, 51 A.2d 2.

The court denied recovery to such purchasers because an essential component of the fraud claim was not established: reliance.

Likewise, in *Trautwein v. Bozzo*, 35 N.J.Super. 270, 113 A.2d 848 (Ch.Div. 1955), plaintiff's fraud claim was denied because the court determined that plaintiff did not rely upon the alleged misrepresentations. Plaintiff purchased a hotel from the defendant. Plaintiff asserted that he was enticed into purchasing the hotel by a newspaper advertisement placed by defendant which represented that the hotel had a bar business grossing $1,100 in sales per week. *Id.* at 275, 113 A.2d 848. The court, however, determined that plaintiff conducted an independent investigation which negated the information set forth in the advertisement. Indeed, the court accepted defendant's testimony that plaintiff had reviewed the hotel's record book at length which showed weekly sales as low at $693 and as high as $1,009. The court rejected plaintiff's testimony that he only made a cursory review of such receipts. *Id.*

The court found that "aside from the advertisement, the defendant did not represent that the hotel had a $1,100 per week bar business". The court held that "where one to whom an allegedly false representation is made concerning ... rents, profits or income makes an independent investigation to learn the truth, and relies on his own investigation rather than on the representation, he has no cause of action based on fraud." *Id.* at 278, 113 A.2d 848. Thus, the court determined that plaintiff's review of the hotel's financial records negated the misrepresentation contained in the advertisement.

For the reasons set forth below, this court concludes that debtor's fraud claim must fail as (1) debtor did not reasonably rely upon RD Elmwood's alleged material omission, and (2) there were no resulting damages.

## Reasonable Reliance

██ Debtor made several assumptions during the time it negotiated to assume the Molk Brothers' lease. First, debtor believed that if it operated House of Drugs in substantially the same manner as Molk Card and Gifts it would be profitable. Second, debtor believed that the success of its store was dependent upon the mall's existing customer base. As such, debtor conducted an independent investigation in order to discover the number of customers that frequented the mall. Both Selzer and Koizim testified at trial that on several occasions they visited the Mall in order to determine the volume of shoppers. Debtor speculated that Rickels and McCrorys drew most of the customers to the Mall. Koizim testified, however, that at the time debtor signed the assignment of the lease it was aware that Rickels had filed for bankruptcy protection. In addition, Selzer testified that he expected turnover of the stores contained within the mall.

This court concludes that debtor undertook an incomplete investigation. Debtor credited both Rickels and McCrorys with bringing in most of the Mall's customers. At the same time, debtor was aware that Rickels had filed for bankruptcy. The bankruptcy should have alerted debtor to the fact that the store might shut down. Accordingly, debtor should have inquired as to the status of the bankruptcy. Debtor could have also asked RD Elmwood if it could review the leases of the existing tenants. Debtor saw the footprint and knew that it was wrong, but did not inquire further. Debtor saw the Molk Brothers' books. Koizim had a business education and experience, and Selzer was a C.P.A. Further, debtor was represented by counsel during the contract negotiations and at the closing.

This court holds that debtor's (1) independent investigation, (2) knowledge pertaining to Rickels' bankruptcy and (3) general conviction concerning retail store

turnover, charged it with a duty of reasonable diligence. Debtor knew facts such that it could have discovered the true nature of the alleged misrepresentation or omission. *See Cronin,* 139 N.J.Eq. at 398, 51 A.2d 2.

### Damages

 Debtor asserts that it experienced a substantial decline in overall sales, approximately thirty–three percent, when Rickels and McCrorys vacated the mall. Specifically, debtor maintains that it would have earned the same amount of yearly profits as Molk Card and Gifts had it not been for the vacancies. Selzer testified that he evaluated debtor's sales for September and October of 1996, and extrapolated from those figures so that debtor's earnings for the first year of business would have been approximately equal to the Molk Brothers' annual sales. (Debtor's Proposed Findings of Facts at 11). Debtor sets forth that this loss was evenly distributed between card and gift sales. Debtor testified at trial that both House of Drugs and Molk Card and Gifts were open during the exact same hours and employed the same number of personnel. In addition, House of Drugs asserts that it advertised considerably more than did the Molk Brothers.

RD Elmwood claims that debtor's decline in sales was not necessarily attributable to the vacancies in the mall. Instead, RD Elmwood maintains that the losses were more likely caused by debtor's failure to obtain the Hallmark distributorship. Debtor argues that a Carlton Cards distributorship is not necessarily less profitable than a Hallmark distributorship. Debtor, however, failed to present this court with any evidence equating the value of the two distributorships.

Rickels tenancy at the Mall ended on October 31, 1996. McCrorys' lease expired in January of 1997. In addition, debtor's license to sell Hallmark cards was canceled in January of 1997. This court disagrees with debtor's assumption that its decline in sales was a direct result of the vacancies. The loss of profits could just as easily be attributable to the change in the greeting card distributorship. As such, debtor's assertion that the two stores were operated in the same manner is flawed. This court, therefore, finds that debtor has not proven damages caused by the vacancies by clear and convincing evidence. *Baldasarre v. Butler,* 254 N.J.Super. 502, 521, 604 A.2d 112 (App.Div.1992), *rev'd in part on other grounds,* 132 N.J. 278, 625 A.2d 458 (1993).

### CONCLUSION

For all of the above reasons, this court finds that RD Elmwood neither committed fraud nor violated New Jersey's implied covenant of good faith and fair dealing.

Counsel for RD Elmwood shall submit an appropriate order within ten (10) days.