**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3065-18

SQUARE TWO, LLC, MIDNIGHT
ENTERPRISES, LLC, and
MIDNIGHT PROPERTIES, LLC,

     Plaintiffs,

v.

JJJ SOLUTIONS, LLC, JOHN C.
GILLESPIE, and JJJ LIQUID
SOLUTIONS, LLC,

     Defendants.

_____

JOHN C. GILLESPIE, JJJ
SOLUTIONS, LLC, a New Jersey
limited liability company, and JJJ
LIQUID SOLUTIONS, LLC, a New
Jersey limited liability company,

     Plaintiffs-Appellants/
     Cross-Respondents,

v.

LAURA L. SQUILLACE, and
RONALD J. SQUILLACE,

Defendants-Respondents/
Cross-Appellants,

and

MIDNIGHT ENTERPRISES, LLC,
A New Jersey limited liability
company, and SQUARE TWO,
LLC, a New Jersey limited
liability company,

Defendants.

_____

Argued January 19, 2021 – Decided March 8, 2021

Before Judges Rothstadt and Susswein.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket Nos. L-3637-16 and L-6995-16.

Joyce M. Smith argued the cause for appellants/cross-respondents.

William I. Strasser argued the cause for respondents/cross-appellants (Strasser & Associates, PC, attorneys; William I. Strasser, on the briefs).

PER CURIAM

In this dispute over the sale of a restaurant, the parties to the transaction appeal from the Law Division's January 22, 2019 final order for judgment that was entered after the judge conducted a two-day bench trial. The purchasers' complaint sought rescission of the sales contract and monetary relief. The

2

A-3065-18

judgment awarded the purchasers the amount paid under the sales contract, based on the trial judge's finding that the sellers fraudulently induced plaintiffs into purchasing the restaurant. The judgment made no award of punitive damages or attorneys' fees as the judge determined the purchasers were not entitled to either. The judgment also dismissed all of the sellers' claims, which were based upon the purchasers' alleged breach of contract.

Plaintiffs also appeal from a December 15, 2017 order that denied their motion for relief based upon defendants alleged spoliation of evidence, and from the trial judge's March 1, 2019 order denying reconsideration.

On appeal, the purchasers, plaintiff John C. Gillespie, and his related businesses, plaintiffs JJJ Solutions and JJJ Liquid Solutions LLC, (collectively Gillespie) argue that the trial judge erred by failing to address Gillespie's spoliation claim, and by denying their claim for punitive damages and counsel fees. In their cross-appeal, the sellers, defendants, Laura L. Squillace and Ronald J. Squillace, and their related businesses, defendants Midnight Enterprises, LLC and Square Two, LLC, (collectively Squillaces) assert that the trial judge incorrectly determined there was clear and convincing evidence to support his finding that the Squillaces fraudulently induced Gillespie into

purchasing the restaurant, and they additionally argue that they were entitled to judgment as a matter of law.

We have considered the parties' contentions in light of the record and the applicable principles of law. We affirm the judgment except as to its denial of punitive damages. We remand the latter issue for reconsideration.

I.

In January 2014, the Squillaces retained Ronald Vanelli to broker the sale of their restaurant Castalia 997 (Castalia) that they had owned and operated for about ten years. Vanelli sent an email to the Squillaces to confirm the details of the listing, which included that the business had a "Gross Sales Average [of] $12,000 per week." Vanelli requested in his email that the Squillaces call him to correct any inaccuracies in the listing's details. The Squillaces did not respond to the email or otherwise correct any detail. And, despite Vanelli's repeated requests, they also did not complete and return to Vanelli a standard Profit & Loss statement form that he asked them to complete.

Although he never received the Profit & Loss form, Vanelli proceeded to advertise Castalia for sale on various platforms. The listing indicated the business realized an average of $12,000 in weekly revenue. Vanelli's listing

A-3065-18

expired in September 2014, whereupon it was agreed that Vanelli would continue his efforts to sell the business but do so on a non-exclusive basis.

According to Gillespie, he had seen Vanelli's advertisements and recognized that they referred to Castalia. However, Vanelli did not introduce Gillespie to the Squillaces. Rather, within about a month of the listing's expiration, Gillespie and the Squillaces were introduced by a mutual acquaintance who knew the Squillaces from the restaurant and knew Gillespie from Gillespie's family's restaurant that was located in another county where Gillespie had been an employee until it was sold.

Thereafter, the parties entered negotiations that spanned the period between November 2014 and July 2015. According to Gillespie, during those negotiations, the Squillaces made multiple oral representations to him that Castalia regularly generated over $12,000 in weekly revenue and approximately $650,000 in yearly revenue. Gillespie also claimed that during numerous meetings, the Squillaces continually rebuffed his requests for financial records, including Castalia's point-of-sale (POS) tickets and previous tax returns, and only permitted Gillespie to have a limited review of some financial documents during visits at Squillaces' home.

A-3065-18

At one meeting in May 2015, Gillespie and his attorney[1] inspected a spreadsheet prepared by the Squillaces. According to Gillespie, the two-page spreadsheet, which the Squillaces did not let him copy, contained Gillespie's attorney's hand-written notes and gross revenue figures consistent with information provided by Squillace to Vanelli.

The Squillaces disputed Gillespie's description of the negotiations as they related to representations they made and the documents they made available to Gillespie. They denied that they mispresented Castalia's income and had in fact accurately represented the numbers to Gillespie during negotiations. According to the Squillaces, they allowed both Gillespie and his attorney to review the POS tickets and a daily worksheet referencing those POS tickets during a meeting in late April 2015.

Notwithstanding their denials that they ever represented Castalia's income to be $650,000, Laura Squillace acknowledged that the number was given to Vanelli as a "starting point" in order "to draw in interest and people." However,

---

[1] The attorney, who also represented Gillespie at trial and now on appeal, is also his life-partner and the mother of his child. Evidently, during the negations the attorney was considering whether to join in Gillespie's purchase, but ultimately decide not to participate.

A-3065-18

she was unsure if that number reflected the business' income or the price for the building from which it operated.

In any event, notwithstanding Gillespie's claims that the Squillaces did not allow him to review the POS tickets or other pertinent financial information, and refused to permit him to make a copy of the May 2015 spreadsheet, he agreed to go forward with the transaction without pursuing any other due diligence like reviewing Castalia's tax returns or hiring an accountant to review the books, because "he trusted the Squillaces." He also moved forward despite the Squillaces rejecting Gillespie's attempt to have a clause removed that essentially stated he was not relying on any representations made by the Squillaces.

The parties executed the contract of sale on July 17, 2015. According to its terms, Gillespie paid approximately one-third of the $315,000 sale price up front and the Squillaces financed the remainder. As part of the deal, Gillespie also entered into a lease with the Squillaces for the business premises.

Under Section 18 of the contract, Gillespie acknowledged that he was not relying upon any representations made by the Squillaces, he "inspected the Business to [his] satisfaction" and "independently investigated, analyzed and appraised the value and profitability thereof." Sections 8 and 36(e) referred to

attorneys' fees being awarded relative to an indemnification being given by the Squillaces for misrepresentations they made, and to a prevailing party in any litigation between the Squillaces and Gillespie "concerning the rights and duties of either party in relation to the business or this Agreement."

The closing of the transaction took place on September 17, 2015. Soon after taking possession of Castalia, Gillespie was unable to realize the revenue that he claims the Squillaces had represented to him. On March 7, 2016, Gillespie met with Ronald Squillace to discuss the problems he was experiencing. After the meeting, the parties exchanged emails about what they discussed.

In his March 7, 2016 email, Squillace acknowledged that Gillespie was not realizing sufficient income to meet the business' expenses and he made numerous suggestions as to how Gillespie could improve the business' revenue. In his March 8, 2016 response, Gillespie confirmed that his "sales have been way off of [Squillace's] prior sales," because he was "doing between 20,000 and 25,000 a month sales[ w]hich is nothing close to the 12,000/12,500 a week and 50,000/55,000 a month [Squillace] said [he] did."

Despite their meeting, the business never improved, and Gillespie shut down its operations. By March 14, 2016, the Squillaces retained counsel to

pursue Gillespie for his defaults under his business lease and his promissory note. The Squillaces filed an action for breach of contract and Gillespie filed an action for fraudulent misrepresentation. Gillespie's five count complaint only asserted claims based upon fraud and not breach of contract or any other grounds. It sought relief in the form of rescission and damages.

At the trial held in December 2018, Gillespie, Vanelli, and Laura Squillace testified for plaintiffs. Ronald Squillace and the individual who introduced him to Gillespie testified for defendants.

After considering the testimony and other evidence adduced at trial, the judge entered the January 22, 2019 judgment under appeal and issued a written statement of reasons as a rider to the judgment. In his decision, the judge based his finding of fraud primarily upon the "extremely credible" testimony of Vanelli who "had no stake in the outcome," and the advertisements he created, which corroborated Gillespie's version of the events; the spreadsheet with the handwritten notes; "the testimony as to what records were permitted to be reviewed along with the discarding of records shortly after the transaction; the testimony of [Laura] Squillace; and, the credible yet unsophisticated testimony of . . . Gillespie." Addressing Ronald Squillace's credibility, the judge found

9

that it was undermined by the credible testimony of Laura Squillace and Vanelli as well as the advertisement and the spreadsheet.

In reaching his conclusion, the judge found that Gillespie was an unsophisticated party, who actually and reasonably relied upon Squillaces' misrepresentations, even though he failed to conduct due diligence, which the judge found was exacerbated by the Squillaces' refusal to provide in-depth financial records. He accepted Gillespie's testimony about not earning anywhere near the amount represented by Squillaces, and found the claim also supported by the emails exchanged in March 2016.

The judge awarded damages in the amount of $130,262, representing the amount that Gillespie had paid to the Squillaces towards the purchase price, but he declined to award amounts paid under the business' lease or attorneys' fees. In so holding, the judge made note of the lengthy pre-trial motions "occasioned by actions of counsel for Mr. Gillespie for which an award of fees [was] not warranted," and further noted that "[t]he relation between Mr. Gillespie and his counsel and the lack of proofs demonstrating an arm's length representation are factors in the court's decision to not award attorney's fees."

Thereafter, Gillespie filed a motion for reconsideration on the issues of the amount of damages and the denial of punitive damages and attorney fees.

The trial judge denied the motion as to punitive damages because an award was a matter of discretion, "reserved for a narrow range of cases into which this one does not fall, in large part because Mr. Gillespie . . . had he undertaken steps on his own behalf, would . . . have prevented this," and that there existed no "reprehensible conduct" on the part of the Squillaces sufficient to punish them any more than requiring restitution of the amount already paid. This appeal followed.

## II.

We begin our review by addressing Gillespie's appeal from the December 15, 2017 order denying his motion for relief based upon the Squillaces' spoliation of evidence in the form of the financial documents and laptop they destroyed allegedly as part of their downsizing before they moved to North Carolina. Gillespie argues that the judge failed to appreciate the appropriate legal factors that would have weighed in Gillespie's favor. Gillespie also claims that the failure to adjudicate the issue of spoliation of evidence at the pre-trial stage prejudiced him insofar as he was forced to expend two additional years in litigation and trial. We find no merit to these contentions.

In his motion, Gillespie sought an order dismissing the Squillaces' claims and as to Gillespie's claims, an adverse inference to be drawn at trial. He also

11

sought leave to file an amended complaint to add a claim for "intentional and fraudulent concealment," and an award of attorney fees. In denying Gillespie's motion without prejudice, the trial judge explained in his December 17, 2017 oral decision that Gillespie's motion was not supported with a proposed amended complaint asserting a claim for spoliation.[2] The judge directed Gillespie to re-file the motion with the proposed pleading, but Gillespie never filed a new motion.

Despite the judge's denial of the motion and Gillespie's failure to file a new motion, in his written decision the judge issued after trial, he relied in part on the Squillace's destruction of the documents and the laptop in support of his finding that the Squillaces fraudulently induced Gillespie into the subject transaction. Thus, the judge in essence granted the adverse inference that Gillespie pursued in his motion.

At the outset, we observe that where spoliation has been found, we leave "[t]he selection of the appropriate sanction . . . to the trial court's discretion and will not . . . distur[b it] if it is just and reasonable under the circumstances." Cockerline v. Menendez, 411 N.J. Super. 596, 620-21 (App. Div. 2010).

---

[2] See Rule 4:9-1 as to the requirement for supporting the motion to amend with a proposed amended pleading.

Moreover, "[t]he best known civil remedy . . . is the so-called spoliation inference that comes into play where a litigant is made aware of the destruction or concealment of evidence during the underlying litigation[,]" wherein "all things are presumed against the destroyer." Rosenblit v. Zimmerman, 166 N.J. 391, 401 (2001).

Under these circumstances, Gillespie's argument on appeal is moot because Gillespie received what he claims he was entitled to and therefore "our decision . . . can have no practical effect on the existing controversy." Redd v. Bowman, 223 N.J. 87, 104 (2015) (quoting Deutsche Bank Nat'l Trust Co. v. Mitchell, 422 N.J. Super. 214, 221-22 (App. Div. 2011)). Even if it is not moot, we discern no abuse of the judge's discretion in denying Gillespie's motion for the reasons stated by the judge.

## III.

Next, we consider Gillespie's argument that the trial judge erred by not awarding him punitive damages. As noted, the judge did not award them because Gillespie's failure to pursue due diligence contributed to his situation and there was no evidence of "reprehensible conduct." Gillespie argues that despite those findings, where fraud has been established punitive damages must

13

be awarded. We disagree with that assertion, but we conclude the trial judge did not sufficiently consider the claim.

"Punitive damages are sums awarded apart from compensatory damages and are awarded as punishment or deterrence for particularly egregious conduct. . . . Generally, punitive damages are a limited remedy and must be reserved for special circumstances." Maudsley v. State, 357 N.J. Super. 560, 590-91 (App. Div. 2003) (citations omitted). "[T]o warrant a punitive award, the defendant's conduct must have been wantonly reckless or malicious. There must be an intentional wrongdoing in the sense of an 'evil-minded act' or an act accompanied by a wanton and willful disregard of the rights of another." Id. at 591 (quoting Nappe v. Anschelewitz, Barr, Ansell & Bonello, 97 N.J. 37, 49 (1984)).

"[I]t is especially fitting to allow punitive damages for actions such as legal fraud, since intent rather than mere negligence is the requisite state of mind." Nappe, 97 N.J. at 50. "[F]raudulent misrepresentations [are a] sufficient basis for punitive damages, since intent rather than mere negligence would thus be satisfied." Albright v. Burns, 206 N.J. Super. 625, 636 (App. Div. 1986) (quoting Nappe, 97 N.J. at 50). "The key to the right to punitive damages is the wrongfulness of the intentional act. 'The right to award exemplary damages

primarily rests upon the single ground—wrongful motive.'" <u>Nappe</u>, 97 N.J. at 49 (quoting <u>Dreimuller v. Rogow</u>, 93 N.J.L. 1, 3 (Sup Ct. 1919)).

Applying these guiding principles, while we recognize that "[t]he decision to award or deny punitive damages . . . rests within the sound discretion of the trial court," <u>Maudsley</u>, 357 N.J. Super. at 590, we conclude that we are constrained to remand to the trial judge to reconsider the issue of punitive damages as the judge made no findings about the Squillaces' intent.

On remand, the judge must make specific findings as to whether the Squillaces' actions were the result of a wrongful motive warranting an award of punitive damages. If so, the judge must enter an appropriate award after taking "into consideration all of the circumstances surrounding the particular occurrence including the nature of the wrongdoing, the extent of harm inflicted, the intent of the party committing the act, the wealth of the perpetrator, as well as any mitigating circumstances which may operate to reduce the amount of the damages." <u>Nappe</u>, 97 N.J. at 50 (quoting <u>Leimgruber v. Claridge Assocs.</u>, 73 N.J. 450, 456 (1977)). We do not by our remand suggest any specific outcome of the judge's reconsideration of this issue.

IV.

We turn to Gillespie's appeal from the judge's denial of attorneys' fees. Gillespie relies upon the previously cited contract clauses stating when a party to the contract would be able to recover attorneys' fees. As noted, the trial judge determined that an award was not appropriate because of Gillespie's relationship with his attorney and the attorney's conduct during the pretrial litigation. Gillespie claims that the judge's conclusion was not supported by any evidence and that in any event it should not have led to the denial of his request for fees.

While "[w]e afford trial courts 'considerable latitude in resolving fee applications,'" Wear v. Selective Ins., 455 N.J. Super. 440, 459 (App. Div. 2018) (quoting Grow Co. v. Chokshi, 424 N.J. Super. 357, 367 (App. Div. 2012)), and such "determinations . . . will be disturbed only on the rarest of occasions, and then only because of a clear abuse of discretion," Packard-Bamberger & Co. v. Collier, 167 N.J. 427, 444 (2001) (quoting Rendine v. Pantzer, 141 N.J. 292, 317 (1995)), we conclude the trial judge did not properly consider Gillespie's fee application if the award of fees are warranted. See Grow Co., 424 N.J. Super. at 367-68 (describing procedure to be followed in fee applications). However, we also conclude Gillespie was not entitled to an award for a different reason; he pursued and prevailed on his claim for rescission of the contract. As we

16

review orders and judgments and not reasons, <u>Do-Wop Corp. v. City of Rahway</u>, 168 N.J. 191, 199 (2001), we affirm the denial of counsel fees for that reason and not the reasons cited to by the trial judge.

Plaintiff's complaint consisted of five counts, all claiming in one manner or another that he was entitled to relief because of the Squillaces' fraudulent conduct. Each count sought rescission, as well as damages. As the trial judge observed, "Gillespie [sought] rescission and return of monies paid in the transaction based upon a claim of fraud, both legal and equitable, by the Squillace[s]." There was no claim for breach of contract and in awarding damages to Gillespie, the trial judge limited Gillespie's award to the amount he paid under the sales agreement in order to restore him to where he would have been had no payments been made under that contract.

"In general, New Jersey disfavors the shifting of attorneys' fees . . . . However, a prevailing party can recover those fees if they are expressly provided for by statute, court rule, or contract." <u>Litton Indus., Inc. v. IMO Indus., Inc.</u>, 200 N.J. 372, 385 (2009) (citation omitted). However, where a contract has been rescinded, it is "wholly undone and no contract provisions remain in force to bind either of the parties." <u>Cnty. of Morris v. Fauver</u>, 153 N.J. 80, 96-97 (1998). Indeed, "[r]escission voids the contract . . . meaning that it is considered 'null

from the beginning' and treated as if it does not exist for any purpose." First Am. Title Ins. v. Lawson, 177 N.J. 125, 137 (2003).

Here, Gillespie achieved his goal of recession. Having done so he was not entitled to enforce his claim for attorneys' fee under the rescinded agreement.

V.

Next, we consider the Squillaces' cross-appeal challenging the entry of judgment in favor of Gillespie. In their cross-appeal, the Squillaces argue that "Gillespie's defense of fraud [should not have] barred [their] breach of contract claims." They also contend that there was insufficient clear and convincing evidence of the elements of fraud including damages.

In addition, the Squillaces assert that Gillespie's claims were barred by the parties contract, which contained express acknowledgments by Gillespie that the Squillaces made no representations to him other than what was incorporated into the agreement, and that Gillespie "independently investigated" the business' "value and profitability" before agreeing to purchase Castalia. Although the Squillaces recognize on appeal that the contract's provisions "cannot be an absolute defense to fraud," they assert that because the clauses were specifically negotiated, the trial judge should not have disregarded them. Moreover, they

contend that Ronald Squillace's testimony that he never made any representations was credible. We disagree.

Our review of a trial judge's decision after a bench trial is limited. Final determinations made by the judge "premised on the testimony of witnesses and written evidence at a bench trial" are reviewed in accordance with a deferential standard. D'Agostino v. Maldonado, 216 N.J. 168, 182 (2013). "[W]e do not disturb the factual findings and legal conclusions of the trial judge unless we are convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice[.]" Seidman v. Clifton Sav. Bank, S.L.A., 205 N.J. 150, 169 (2011) (second alteration in original) (quoting In re Trust Created By Agreement Dated Dec. 20, 1961, ex rel. Johnson, 194 N.J. 276, 284 (2008)).

"The general rule is that findings by the trial court are binding on appeal when supported by adequate, substantial, credible evidence." Cesare v. Cesare, 154 N.J. 394, 411-12 (1998). In reviewing the judge's fact findings, "[w]e do not weigh the evidence, assess the credibility of witnesses, or make conclusions about the evidence." Mountain Hill, LLC v. Twp. of Middletown, 399 N.J. Super. 486, 498 (App. Div. 2008) (alteration in original) (quoting State v. Barone, 147 N.J. 599, 615 (1997)). While "our review of the sufficiency of the

19

facts to satisfy an applicable legal standard is a question of law" that is subject to "plenary" review, id. at 498-99, "[r]eversal is reserved only for those circumstances when we determine the factual findings and legal conclusions of the trial judge went 'so wide of the mark that a mistake must have been made.'" Llewelyn v. Shewchuk, 440 N.J. Super. 207, 214 (App. Div. 2015) (quoting N.J. Div. of Youth & Fam. Servs. v. M.M., 189 N.J. 261, 279 (2007)).

However, a trial court's legal determinations are not entitled to any special deference and are reviewed de novo. D'Agostino, 216 N.J. at 182 (citing Manalapan Realty, LP v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)). Informed by this deferential standard of review, we turn to the substantive principles governing this cross-appeal.

A contract that is procured by fraud is subject to rescission. See Merchs. Indem. Corp. v. Eggleston, 37 N.J. 114, 130-31 (1962). To state a claim for common law fraud, a plaintiff must allege facts that, if proven, would establish the following five elements: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." Gennari v. Weichert Co. Realtors, 148 N.J. 582, 610 (1997) (citation omitted).

In order to establish the tort of fraudulent inducement, a plaintiff must prove a misrepresentation of material fact, knowledge or belief by the defendant of its falsity, intent that the other party rely on it, and detrimental reliance thereon by the other party. Nolan v. Lee Ho, 120 N.J. 465, 472 (1990) (citing Jewish Ctr. of Sussex Cnty. v. Whale, 86 N.J. 619, 625 (1981)). Fraud in the inducement does not differ materially from common law fraud, as it provides a cognizable basis for equitable relief in the event a false promise induced reliance. See Lipsit v. Leonard, 64 N.J. 276, 283-84 (1974).

However, "fraud is never presumed, but must be established by clear and convincing evidence." Weil v. Express Container Corp., 360 N.J. Super. 599, 613 (App. Div. 2003). The plaintiff's reliance must also be reasonable. Daibo v. Kirsch, 316 N.J. Super. 580, 588 (App. Div. 1998). The precise definition of what is "reasonable" has been examined previously by our courts. Reliance on a misrepresentation is not reasonable or justifiable if the recipient "knows that it is false or its falsity is obvious to him." Restatement (Second) of Torts § 541 (Am. Law Inst., 1977) (hereinafter Restatement); see also Walid v. Yolanda for Irene Couture, 425 N.J. Super. 171, 182 (App. Div. 2012) ("The principles set forth in the Restatement accurately reflect the law in New Jersey.").

21

Applying our limited review of the trial judge's findings, we conclude the Squillaces' contentions that challenge the sufficiency of the credible evidence supporting the trial judge's judgment are without merit. Suffice it to say, the judge made credibility determinations and found the facts detailed in his written decision that clearly and convincingly established the Squillaces' fraudulent conduct, including the fact that after the sale, Castalia failed to realize revenue in amounts consistent with the Squillaces misrepresentations that were made in order to induce Gillespie to purchase the business.

We also conclude that the judge's legal determinations were correct. Specifically, and contrary to the Squillaces' argument before the judge and now on appeal, the provisions of the sales agreement did not bar Gillespie's claims even if they were negotiated.

As we already noted, the Squillaces argue the agreement's clauses that state they made no representations and Gillespie investigated the business' profitability undercut Gillespie's claims of fraud. However, a "no representations" clause is not a bar to claim of fraud where there is reliance upon facts that are "peculiarly within th[e other] party's knowledge and were, in fact, intentionally misrepresented," Walid, 425 N.J. Super. at 185-86, an independent investigation of the facts had not been conducted, and the misrepresentation is

22

not obvious from a cursory review of the facts revealed to the party claiming fraud. See Bilotti v. Accurate Forming Corp., 39 N.J. 184, 204 (1963); Walid, 425 N.J. Super. at 185; Restatement § 541 cmt. a. Thus, a recipient of a misrepresentation is justified in relying on that misrepresentation even though an investigation might have revealed its falsity, Walid, 425 N.J. Super. at 181; Restatement § 540, because "[o]ne who engages in fraud . . . may not urge that one's victim should have been more circumspect or astute." Jewish Ctr., 86 N.J. at 626 n.1. As one court has observed:

> New Jersey law does not impose upon a party to an arm's length transaction a general duty of inquiry. Accordingly, during negotiations a party may accept another party's representations as truth. A party that elects to make an independent investigation, however, will be accountable for everything such party could have discerned by employing reasonable diligence. [John Hancock Mut. Life Ins. of Boston v. Cronin, 139 N.J. Eq. 392, 398 (1947).] Put differently, if upon conducting an investigation the representee learns facts such that he is alerted to the falsity of the representor's statements, he will be barred from seeking relief.
>
> [House of Drugs, Inc. v. RD Elmwood Assocs. (In re House of Drugs, Inc.), 251 B.R. 206, 211 (Bankr. D.N.J. 2000).]

We have previously followed that model. For example, in Walid, 425 N.J. Super. at 174-75, we examined a fraud claim arising from a purchase of a bridal

shop. The seller in that case provided the purchasers with bank deposit summaries, tax returns, pending purchase orders, profit and loss statements, and a "fact sheet" listing annual sales and operating profit. Id. at 175-76. Against the advice of their attorney, the purchasers decided not to engage an accountant to examine these documents and opted instead to review the documents themselves. Ibid. After the sale, the business failed, and the purchasers filed suit. Id. at 176. The plaintiffs alleged, and the judge subsequently found, that the seller had misrepresented the business's gross incomes. Id. at 177.

On appeal, we first noted in Walid that the plaintiffs were not experts in examining business documents, and so the documents provided by the seller would not have been obviously fraudulent to the plaintiffs. Id. at 184. Moreover, the plaintiffs did not conduct any additional investigation beyond reviewing the documents, and so they would not have had any other way of knowing that a fraud was being perpetrated upon them. Ibid. We therefore concluded that the plaintiffs were justified in their reliance upon the seller's representations of the business's profitability. Id. at 184-86.

We reached a different conclusion in the earlier matter of Trautwein v. Bozzo, 35 N.J. Super. 270, 272 (Ch. Div. 1955), aff'd o.b., 39 N.J. Super. 267 (App. Div. 1956). There, the plaintiff sought rescission of his purchase of a

24

hotel because, he alleged, the defendant misrepresented the weekly gross of the bar within the hotel. In particular, the seller represented in an advertisement that the weekly gross was $1,100. Id. at 273. The plaintiff said that prior to the sale, he saw a notebook containing records of daily bar receipts for each week indicating that receipts were "far less than" the advertised amount. Id. at 278. For those reasons, the judge concluded in that case that the plaintiff "was not in fact deceived" and that the plaintiff entered into the agreement for other reasons. Id. at 279. The court therefore refused to order rescission of the sale. Ibid.

The law therefore does not allow the perpetrator of a fraud to use the resulting contract as a shield against a claim. Contrary to the Squillaces' contention, Gillespie was, as the trial judge concluded, legally entitled to rely upon the false representations that trial judge found the Squillaces made, where there was no evidence that Gillespie made any independent investigation and instead relied upon the Squillaces' honesty. It makes no difference, as the Squillaces contend without any legal support, that the contract's clauses were negotiated by the parties. We have no cause to disagree with the trial judge's dismissal of the Squillaces' claims or his awarding relief to Gillespie.

## VI.

In sum, we affirm the entry of the judgment except as to the issue of punitive damages, which we remand for reconsideration. To the extent we have not specifically addressed any of the parties' remaining arguments, we conclude they are without sufficient merit to warrant discussion in a written opinion. <u>R.</u> 2:11-3(e)(1)(E).

Affirmed in part; vacated and remanded in part for further proceedings consistent with our opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION